Jacob Lorillard, Respondent, *v.* William P. Clyde et al., Appellants.

Where the performance of a contract depends upon the continued exist-
ence of a person or thing which is assumed as the basis of the agree-
ment, the death of the person or the destruction of the thing terminates
the obligation.

So, also, if after a contract is made the law interferes and makes subse-
quent performance impossible, the party is held to be excused.

The parties, who were engaged in and were competitors in the business of
water transportation, entered into an agreement to combine their inter-
ests. This provided that a corporation should be organized, each to
contribute thereto an equal amount of capital in the vessels and proper-
ties then employed by them, defendants to have the management of
the business and to receive commissions for its performance. In con-
sideration thereof defendants guaranteed to plaintiff a dividend of not
less than seven per cent per annum on his shares for seven years. Divi-
dends when earned were to be declared and paid quarterly, and during
the seven years neither party was to be interested in any competing
steam water line without the consent of the other. The corporation was
organized and the business carried on by it for about five years, when,
by the judgment in an action brought by the attorney-general in the
name of the People, the corporation was dissolved and a receiver
appointed. In an action to recover the amount so guaranteed for the two
years subsequent to the dissolution, *held,* that the parties contracted upon
the assumption of corporate existence during the period covered by the
guaranty; that the dissolution took away for the future the whole con-
sideration upon which the guaranty was based, and so relieved the
defendants from liability thereon.

It was claimed by plaintiff that the causes of the dissolution of the cor-
poration were the wrongful acts of the defendants, and so they were
estopped from interposing it as a defense. The grounds of forfeiture
upon which the judgment in the People's action was based were techni-
cal violations of the statute under which the corporation was organized,
not affecting any public interests, and for some of them plaintiff was as
much responsible as defendants. The action was brought upon the
application of plaintiff, he gave the bond required by the attorney-gen-
eral as security for costs, and also verified the complaint. *Held,* that
plaintiff owed no public duty to the state to bring to the notice of its
officers the technical breaches of corporate duty upon which the judg-
ment of dissolution proceeded; that as between the parties themselves
there was no cause for dissolution; and, as plaintiff procured the judg-
ment, that defendants were not precluded from availing themselves of
it as a defense.

(Argued March 6, 1894; decided June 5, 1894.)

· APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made October 24, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

This action was brought to recover upon a guaranty of dividends upon plaintiff's stock in the Philadelphia and New York Steam Navigation Company for the years ending July 1, 1880, and July 1, 1881, contained in a contract between plaintiff and defendants.

The provisions of said contract and the facts, so far as material, are stated in the opinion.

*James C. Carter* for appellants. The contract upon which the action was brought clearly contained the condition, although it was unexpressed, that the corporation should continue to exist during the period embraced by it. (*Dexter* v. *Norton,* 47 N. Y. 62; *Taylor* v. *Caldwell,* 113 Eng. C. L. 824; *People* v. *G. M. Ins. Co.,* 91 N. Y. 174; *Farrows* v. *Wilson,* 4 L. R. [4 C. P.] 744; *Wolf* v. *Howes,* 24 Barb. 174; *Stewart* v. *Loring,* 5 Allen, 307.) The dissolution and consequent destruction of the corporation before the time when the dividends in respect to which the action was brought could have fallen due put an end to the contract. The consideration entirely failed at that point. (*People* v. *G. M., etc., Co.,* 91 N. Y. 174; *Farrows* v. *Wilson,* 4 L. R. [4 C. P.] 744; *Wolf* v. *Howes,* 24 Barb. 174; *Stewart* v. *Loring,* 5 Allen, 306; *Knight* v. *Bean,* 22 Maine, 531; Benjamin on Sales, § 570.) The plaintiff attempts to escape from the consequences of the foregoing proposition by asserting that it cannot apply to the case where the destruction of the thing has been accomplished by the wrongful act of the party who seeks to excuse himself from the performance of the contract by alleging its destruction; and he asserts that the destruction of the corporation in this instance was caused by the wrongful acts of the defendants, or of one of them, in the management of it. The judgment appealed from cannot be thus supported. (*People* v.

*G., etc., Ins. Co.,* 99 N. Y. 174; *People* v. *B. T. Co.,* 23 Wend. 222; Whart. on Neg. §§ 134, 135; *M. C. R. R. Co.* v. *Burrows,* 33 Mich. 15.) The plaintiff cannot take the ground that the attorney-general ought to have brought the action. It was not an action in which there was any public interest, as he himself had fully recognized by offering and giving to the People the indemnity required by law in such cases. (Code Pro. § 430.)

*Richard L. Sweezy* for respondent. A person who has destroyed the subject-matter of a contract by his own act, or who has made performance thereof impossible by his own wrong, can found no defense thereupon. (3 Am. & Eng. Ency. of Law. 907; *Woolner* v. *Hill,* 93 N. Y. 376; *Hawley* v. *Keeler,* 53 id. 114; *Crist* v. *Armour,* 34 Barb. 378; *James* v. *Burchell,* 82 N. Y. 108; *Niblo* v. *Binnse,* 3 Abb. Ct. App. Dec. 775.) The assumption of appellants' counsel that the acts which furnished ground for the dissolution of the corporation were done in pursuance of agreement with plaintiff is entirely without foundation. (*Lorillard* v. *Clyde,* 99 N. Y. 196; 122 id. 41; 102 id. 59; 16 J. & S. 409.)

ANDREWS, Ch. J. The validity of the contract upon which the action is brought was adjudicated in the case reported in 86 N. Y. 384. The divisible character of the obligation of the defendants, and the right of the plaintiff to maintain separate actions for successive payments on the guaranty as they fell due has also been settled. (122 N. Y. 41.) The plaintiff in the actions heretofore brought has recovered under the contract dividends or the equivalent of dividends on his stock at the rate of seven per cent per annum from July 1, 1874, to July 1, 1879, a period of five years antecedent to the dissolution of the corporation. The present action is to recover such dividends for the two succeeding years, which complete the term of seven years specified in the guaranty.

The effect of the dissolution of the corporation upon the contract of guaranty as to payments subsequently accruing

thereon presents the new question involved in the present litigation. Its solution rests primarily upon an interpretation of the contract. The object of the contract, as stated therein, was the consolidation of the interests of the respective parties in the business of water transportation between New York and Philadelphia. They were competitors in the business. The plaintiff owned and ran steamships between these ports by the outside route, and the defendants conducted their business between the same ports by means of tugs and barges running upon the canals and inside water routes. The outside business could be carried on during the whole year. The business by the inside routes was of necessity suspended during the time the canals were closed by frost. The plan of combination was to organize a corporation to which each of the interests would contribute an equal amount of capital in the properties then employed by each in the business of transportation, at an agreed valuation, any difference in value to be equalized by payment by the one party to the other. The written contract embodied the scheme. It provided for the organization of a corporation under the law of New York, with a capital of $300,000; designated the vessels to be contributed by each interest and fixed their value; provided for the payment by the Clydes to the plaintiff of $20,000 for equality of interest. Among other provisions is the following: "William P. Clyde & Co. to have the management of said corporation and business, and in consideration thereof to guarantee to Jacob Lorillard a dividend of not less than seven per cent per annum for seven years, and to receive for such management the usual commission of two and one-half per cent in and five per cent out at each end, of the freights earned." The corporation was organized; a board of five directors was designated in the certificate of incorporation; one-half of the stock, being fifteen hundred shares, was issued to the plaintiff, and the other half to W. P. Clyde & Co., except that *three* shares of the par value of $100 each were, by the direction of the Clydes, taken from their one-half and certificates issued to three clerks who were named as directors, in order to qualify

them under the statute.    The business of the corporation was carried on under the management of W. P. Clyde & Co. until April, 1879, when a suit was brought in the name of the People by the attorney-general to dissolve the corporation and a temporary receiver appointed.    The case was tried and resulted in a judgment dissolving the corporation and the appointing of a permanent receiver.    It is unnecessary to enter into greater detail at this time of the facts disclosed by the record.    Other facts will be hereafter referred to.

The question whether the obligation of the defendants under their guaranty continued in force as to the part of the seven years, unexpired at the time of the dissolution of the corporation, in the absence of any responsible agency of either party for the causes which led to the dissolution, must be determined by the intention of the parties as ascertained from the language of the contract, and, if ambiguous, from such language and the surrounding circumstances.    The contract contains no explicit statement on the subject.    It assumed that the corporation would be in existence during the whole period over which the guaranty extended.    The guaranty was not for the yearly payment of a sum equal to seven per cent on the capital of the plaintiff in the corporation, or on the nominal amount of his stock.    It was, that the dividends of the corporation should annually for seven years equal that sum.    The plaintiff would under the contract and by virtue of his right as a stockholder be entitled to dividends declared by the company, whether they should be more or less than seven per cent per annum, and if dividends less than that amount should be made, the liability of the defendants on their guaranty would be limited to a sum sufficient to make up the deficit.    In case the dividends equalled or exceeded seven per cent there would be no liability, and in case no dividends were declared then the guaranty would stand in the lieu of dividends.    The contract provided that " accounts shall be made up and dividends when earned shall be declared and paid quarterly," and it was also provided that during the seven years neither party should be interested " in any com-

peting steam water line between New York and Philadelphia without the consent of the other party in writing." The fact that guaranty was of "dividends," which implies the existence of the corporation during the time specified capable of earning and declaring dividends, and the prohibition against either party becoming interested in competing lines during the same period, inserted for the protection of the corporate business, plainly indicate that the parties were dealing upon the assumption of corporate existence during the period covered by the guaranty. But this becomes much more plain when the nature of the transaction in which the parties were engaged and the consideration upon which the guaranty rested are considered. The real purpose of the parties was to combine their properties and conduct the transportation business between New York and Philadelphia as a joint business, each contributing the same amount of capital and being equally interested in the vessels. The arrangement was substantially a partnership with a corporate organization. The consolidation would prevent competition and presumably benefit both interests. The management of the business was by the contract to be vested in W. P. Clyde & Co., and "in consideration thereof" and of their right to receive the usual commissions on inward and outward bound freight which was given them, they agreed to guarantee to the plaintiff dividends at the rate and for the time specified.

It is incontrovertible that the right to manage the business of the corporation and to earn and to receive the commissions on freight were the considerations upon which the guaranty rested. The plaintiff conceded these rights to the Clydes for this equivalent. The defendants could receive the benefits of the contract only in case the corporation should continue in being during the running of the guaranty. The death of the corporation would terminate their management; prevent their earning commissions; the business would end, and the court, in administering the assets, would return to each party his proportion of the capital remaining for distribution. The death or dissolution of the corporation would withdraw all the

capital invested, so far as it remained, and take away for the future the whole consideration upon which the guaranty was based. There would thereafter be no corporation earning or capable of earning dividends, and nothing left upon which the obligation to pay them could be predicated. The general doctrine that when a party voluntarily undertakes to do a thing, without qualification, performance is not excused because by inevitable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do, is well settled. This doctrine protects the integrity of contracts, and one of the reasons assigned in its support in the early case of *Paradine* v. *Jane* (Aleyn Rep. 26) is that as against such contingencies the party could have provided by his contract. (See *Harmony* v. *Bingham*, 12 N. Y. 99; *Ford* v. *Cotesworth*, L. R. [4 Q. B.] 134; *Jones* v. *U. S.*, 96 U. S. 24.) But it is now well settled that when performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation. Executory contracts for personal services; for the sale of specific chattels, or for the use of a building, are held to fall within this principle. (*Dexter* v. *Norton*, 47 N. Y. 62; *People* v. *Globe Mutual Ins. Co.*, 91 id. 174; *Taylor* v *Caldwell*, 113 Eng. C. L. 826.) These cases are not exceptions to the rule that contracts voluntarily made are to be enforced, but the courts in accordance with the manifest intention construe the contract as subject to an implied condition that the person or thing shall be in existence when the time of performance arrives. So, if after a contract is made the law interferes and makes subsequent performance impossible, the party is held to be excused. (*Jones* v. *Judd*, 4 N. Y. 412.)

It must be conceded that it is difficult to draw the line and to determine the exact limitations of the principle. When the executory contract relates to specific chattels, and the subject-matter is destroyed without fault of the party, the implied condition arises and excuses performance. But where the

contract is based on the assumed existence and continuance of a certain condition, or upon the continuance of a subject-matter which, however, is not the direct object of the contract, is the principle in such cases excluded? The present case illustrates what we have in mind. The contract in question was not with the corporation whose life was extinguished by the judgment of dissolution. But the guaranty assumed that the corporation would continue in existence during the seven years period. The liability which the defendants assumed was in consideration of the benefits which might accrue to them from the management of the transportation business of the corporation during that period. Upon the assumption that the death of the corporation was brought about without their fault, were they thereafter bound? Is the doctrine of implied condition less applicable than it would be if the contract had been between the defendants and the corporation? If in the one case the contract, so far as it was unexecuted, would be terminated, did not the happening of the same event terminate the engagement of these parties, based on the assumed continuance of the corporation in life? There is in the present case, we think, an element which strengthens the conclusion we have reached, that the obligation of the contract terminated *prima facie* with the dissolution of the corparation. There is something more than an implied and wholly unexpressed condition that the corporation should continue in life during the seven years. It is the fair construction of the language of the contract itself. The contract was not unilateral. It contains mutual stipulations. These mutual stipulations by their terms look to the continuance of the corporation, and the mutual obligations into which the parties entered are qualified by this understanding.

The plaintiff, however, seeks to avoid the force of the proposition that, by the true construction of the contract, the obligation of the guaranty as to future payments did not survive the dissolution of the corporation, by the claim that the causes of the dissolution of the corporation were the wrongful acts of the defendants, and that they cannot interpose the

judgment of dissolution brought about by their own misconduct as a defense. We think the answer to this claim is that, as between these parties and in this action, the plaintiff himself must be considered as having procured the dissolution of the corporation. The grounds upon which the court in the People's action proceeded in adjudging the dissolution are set forth in the judgment, which is an exhibit in this action. The act of 1852, under which the corporation was organized, is a general law for the incorporation of steam ocean navigation companies. The act offers to any seven or more persons the opportunity to organize a corporation thereunder. It specifies what the certificate to be filed shall contain, and, among other things, that it shall specify "the ports between which the vessels (of the corporation) are intended to be navigated." (Sec. 1.) The corporators may insert one or many routes at their pleasure. The act also directs that the corporation shall be managed by not less than five nor more than nine directors, who shall be shareholders. (Sec. 3.) The sixth section makes the stockholders severally individually liable for the debts of the corporation to an amount equal to the amount of the stock held by them respectively "until the amount of its capital stock shall have been paid in and a certificate thereof shall have been made and recorded." The 7th section makes it the duty of the president and a majority of the directors, within 30 days after the payment of the last installment of the capital stock, to make and verify a certificate of the fact, " and within said thirty days record the same in the office of the clerk of the county in which is located the principal business office of the corporation." The grounds of forfeiture upon which the judgment in the People's action was based, as near as can be gathered from the record, were (1) that three of the five directors were disqualified, not being stockholders in the company ; (2) that no certificate of the payment in full of the capital stock of the corporation had been made and filed as required by the 7th section of the act, although fully paid up in 1874 ; (3) that annual meetings of the stockholders for the election of directors had not been held ; (4) that the corpora-

tion had at times diverted some of the sea-going vessels from the route designated in the certificate to other sea routes.    In support of the first ground of forfeiture it was shown on the trial of the action that the defendants, after making a transfer on the books of the corporation of one share of stock to each of the three clerks who were named as directors, took back an assignment from each in blank of the share standing in his name and continued to hold the same until the dissolution. As between the plaintiff and defendants this accomplished the purpose which was an essential part of the agreement between them, that each of the parties should hold an equal amount of the stock of the corporation.    The fourth ground of forfeiture was based on the fact that ships from time to time belonging to the corporation were employed on other routes than the one mentioned in the certificate of incorporation.    The contract between the parties contemplated that during the summer months, when the business could be carried on by the inside route, the outside vessels might be employed on some route other than that specified in the certificate, and the contract provided that " the managers may temporarily divert any of the property of the corporation where it can be more profitably employed."    In pursuance of this authority the plaintiff, during the first year, ran vessels on behalf of the company on other routes than the one designated.    Assuming that the several acts and omissions adjudged in the People's action were violations of corporate obligation and duty, which under section 430 of the Code of Procedure in force when the proceedings to annul the charter of the corporation were taken, authorized the state to bring and maintain that action, it is difficult to see how any public interest required a resort to this remedy.    The irregularities and omissions, so far as appears, would have been corrected on notice to the corporation, but no such notice was given.    The section of the Code referred to makes it the duty of the attorney-general, upon leave granted, to bring an action to annul the charter of a corporation for any of the acts or omissions specified in that section, " in every case of

public interest." But in other cases, only where " satisfactory security shall be given to indemnify the People of this state against the costs and expenses to be incurred thereby." The section discriminates between violations of corporate duty affecting "public interests," or as was said in *Thompson* v. *People* (23 Wend. 583) where a corporation has committed " some misdemeanor in the trust injurious to the public," and technical, incidental or immaterial violations which, although strictly involving liability to forfeiture, might not seem to require this drastic procedure. In the one case the attorney-general is bound to act. In the other only when required to act by the intervention of some other party, and he indemnifies the state and assumes the burden of the litigation. The plaintiff in this action was the active promoter of the People's action. The suit was instituted upon his application ; he gave the bond required by the attorney-general and verified the complaint ; the suit was carried on and tried by private counsel employed by him. It is safe to say that unless for his active intervention the suit would never have been prosecuted. If you go back of the judgment to inquire for the cause of the dissolution, you come to the plaintiff as the proximate and efficient agency in procuring it. He owed no public duty to the state to bring to the notice of its officers the technical breaches of corporate duty upon which the judgment proceeded. For some of them he seems to have been as much responsible as the defendants, and that in doing what he did he was not actuated by a regard for the public interest, or by a sense of public duty, the record contains ample evidence. We think that the finding that the defendants forfeited their management of the corporation by their own wrongful acts is not sustained by the evidence, in the sense that they were wrongful as to the plaintiff, or that as between these parties they were the cause of the dissolution. Even if the true construction of sec. 430 is that it is only in cases where the proof of violations of corporate duty is uncertain that the attorney-general is not bound to bring an action, this would not, we think, change the result. The plaintiff procured it

.to be brought, and he must be regarded as the responsible cause of the dissolution.

The judgment should be reversed and a new trial ordered. All concur.

Judgment reversed.