ROBERT O. BABBITT, Appellant, *v.* WILLIAM W. GIBBS, Respondent.

CONTRACT—RAILROAD REORGANIZATION—AGREEMENT FOR SERVICES AND COMPENSATION—RIGHT TO COMPENSATION NOT LOST BY CHANGE IN AGENCIES FOR COMPLETION OF ROAD.  If the promoter of the reorganization and completion of a railroad controlled by him contracts in writing with another to deliver to such other, upon completion of the road, a certain amount of the bonds and stock of the reorganized road, in compensation for services agreed to be performed in connection with the reorganization, and the promisee performs the services called for and the road is reorganized and completed, and the promoter receives the benefit thereof and of the promisee's services, the promisee will not be deprived of his right to compensation merely because the reorganization and completion were not accomplished by the agencies or in the manner first selected by the promoter and embodied in a contract between him and a third party, but were accomplished by other agencies, substantially selected by the promoter, on the abandonment of the contract with the third party, and substituted for those first selected, by changes to which the promisee was not a party.

*Babbitt* v. *Gibbs*, 76 Hun, 613, reversed.

(Argued June 15, 1896; decided October 13, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 22, 1894, which affirmed a judgment in favor of defendant entered upon the report of a referee dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David Keane* for appellant.

*Philip G. Bartlett* for respondent.  The judgment is supported by findings of fact, resting on sufficient evidence, which have been sustained at General Term and cannot be reviewed further.  (*E. B. Co.* v. *Vil. of Haverstraw*, 142 N. Y. 146; *Crim* v. *Starkweather*, 136 N. Y. 635; *Keasbey* v. *B. C. Works*, 142 N. Y. 470; *McShane Co.* v. *Padian*, 142 N. Y. 207, 210; *Stokes* v. *Mackay*, 140 N. Y. 640, 649; *Kenyon*

36

v. *Knights Templar & M. M. A. Assn.*, 122 N. Y. 247, 258 ;
*Camp* v. *Treanor*, 143 N. Y. 649, 650.) Upon the pleadings
and the most favorable view of the evidence no judgment for
plaintiff was permissible. (*Johnson* v. *Brooks*, 93 N. Y.
343 ; Story's Eq. Juris. § 717 ; 3 Pom. Eq. Juris. § 1402 ; *P.
C. Co.* v. *D. & H. C. Co.*, 31 N. Y. 91 ; *Bradley* v. *Aldrich*,
40 N. Y. 504 ; *Wheelock* v. *Lee*, 74 N. Y. 495 ; *Wilder* v.
*Ranney*, 16 Wkly. Dig. 478 ; *Watson* v. *M. Ry. Co.*, 17 Abb.
[N. C.] 289 ; *Hale* v. *O. Nat. Bank*, 49 N. Y. 626 ; *O'Brien*
v. *Fitzgerald*, 143 N. Y. 377 ; *Willis* v. *Bellamy*, 20 J. &
S. 373 ; *Phelps* v. *Mayor*, *etc.*, 25 Abb. [N. C.] 156 ; *Barnes*
v. *Brown*, 130 N. Y. 372.)

O'BRIEN, J. The plaintiff sought to compel the specific
performance by the defendant of a contract for the delivery
of certain railroad stock and bonds which the plaintiff was to
receive for his services as an attorney at law. The learned
referee held that the action would not lie, dismissed the com-
plaint, and the judgment entered on his decision has been
affirmed at the General Term.

In order to understand the real nature and merits of the
controversy, it is necessary to get a clear view of the purpose
and mutual obligations of two written agreements which are
at the foundation of the plaintiff's claim. They were both
made on the same day, and though in form they are separate
contracts, they must be read together in order to determine
plaintiff's legal rights. The instrument first in order is an
agreement made between the defendant and one John Weir,
of London. The plaintiff was not a party to it, but to
another contract based upon it. The substance of this instru-
ment was correctly summarized by the learned referee as
follows :

" On November 2d, 1886, an agreement was made between
the defendant and said Weir, which recited that the defend-
ant was the owner of a majority of all the bonds and stock
of the Pennsylvania, Slatington and New England Railroad
Company, against which foreclosure proceedings were then

pending, and that he, being desirous to reorganize and complete said road after the sale thereof in foreclosure, and to secure the assistance therein of a practical railroad man, had invited the said Weir to join him in the said enterprise, which the said Weir had agreed to do. It was then provided that Gibbs should bring about the said foreclosure sale as speedily as possible, and should ' have the title taken either to himself or to himself and said Weir, or to any .other person as they may elect, for the purpose of reincorporation;' that as soon as said sale should be made the said road should be reorganized ' upon such basis as to stock and bonds per mile and with such directors and officers as may be agreed upon by said Gibbs and Weir;' that Weir should personally undertake the management and construction of said road; that both parties should put forth their best efforts to raise capital for the purposes of the enterprise; that out of the bonds of the reorganized company Gibbs should receive so many as should be required for the payment to him in cash, for advances, etc., the sum of $300,000, with interest, and for the settlement of certain liens and judgments and of all claims connected with the enterprise for which Gibbs was personally liable, and for the payment of all disbursements, costs, legal expenses, receiver's fees, etc.; that so many of the remaining bonds and so much of the stock of the said reorganized company as might be necessary should be used to provide sufficient capital to complete said road; and that the bonds and stock then remaining should be divided equally between said Gibbs and Weir. It was further provided that Weir should exert his influence and efforts to obtain favorable traffic arrangements with connecting roads; that both parties should co-operate in every way in completing and promoting the interests of the enterprise; and that in case said Weir and Gibbs shall not be able to raise the capital necessary to complete the said road within four months from the time said reorganization is effected, then the said Weir's interest in this contract shall cease."

The purpose of this contract between the defendant and

Weir was to accomplish, among other things, the following results : (1) The defendant, being the owner of a majority of the stock and bonds of the railroad named, desired to reorganize it through foreclosure proceedings and then complete it, for it was not yet completed, and in order to bring all this about the defendant needed the assistance of a practical railroad man, and had, therefore, invited Weir to join him in the enterprise, that is, of reorganizing and completing the road. (2) One or both, or some one in their interest, was to take title to the road upon the sale, and it was to be stocked and bonded as they might agree, and the same divided between them and used as stipulated in the agreement. (3) But, in a certain contingency, Weir was to drop out of the enterprise, and his interest in the contract was to cease. That contingency was that they should be unable, within four months from the time of the reorganization, to raise the capital necessary to complete the road.

The reorganization was accomplished in the month of September, 1887, and the new corporation took the name of the Pennsylvania, Poughkeepsie and Boston Railroad Company. The road commenced at Slatington, on the Lehigh river in Pennsylvania, ran through that state and New Jersey, and terminated at Pine Island in New York, where it connected with a branch of the Erie railroad.

Having thus obtained a view of the general scheme outlined by this contract, as between the parties to it, we must return to the other agreement made by them with the plaintiff, upon which this action was brought. This written agreement was made on the same day as the one previously referred to, between the defendant and Weir of the first part, and the plaintiff of the second part. It recited the making of the agreement heretofore mentioned and the fact that the parties of the first part desired to secure the services of the plaintiff in connection with the enterprise, and then contains the following stipulation :

" That said Babbitt hereby agrees to perform for said Weir and Gibbs such legal and other services as he may be required

by said Weir and Gibbs to render about the reorganization and construction of the said railroad, and about all matters concerning and mentioned in the agreement made this day between said Weir and Gibbs until the final completion of said road, and further agrees in every way to promote the interests of said enterprise to the best of his ability;

" That upon the completion of said road there shall be delivered to said Babbitt, as consideration for such services, $25,000 par value of the first mortgage bonds, and $75,000 par value of the stock of the said reorganized road in full payment for the same."

The plaintiff in this action demands specific performance of this agreement by the defendant by delivery of the stock and bonds mentioned therein. It will be seen that the plaintiff was not by this agreement entitled to receive the stock and bonds until the railroad was reorganized and completed. It was reorganized, as already stated, and the finding is that it was completed some time thereafter. It is also found that the plaintiff performed services under this agreement of the character contemplated. So far as appears, he performed all that was required of him, and there is no finding that he failed in any respect to perform his agreement.

The fact which controlled the decision of the referee was that Weir, who was a party to the original scheme, disappeared from it entirely, and failed to carry out his part of the contract, or, as it is expressed by the referee, that contract failed and was abandoned. His view was that the plaintiff's rights to the stock and bonds depended not only upon the reorganization and completion of the railroad, but the reorganization and completion in the manner and by the agencies contemplated by that agreement; that the plaintiff's compensation, by means of bonds and stock, was conditioned upon the success of the identical scheme outlined in the agreement, and as that failed the plaintiff's rights failed with it. There is no doubt that the particular scheme through which the defendant sought to reorganize and complete a railroad of which he was the principal owner, failed or rather

was changed by the defendant's action and consent, but it is important to note that in the end the result which he aimed at was accomplished through other agencies and by other means. It is also important to bear in mind that the plaintiff was not a party to any of the changes that took place in the methods, or the agencies through which the main result which the defendant sought was to be attained. His obligations to render services were never changed, and so far as appears he performed his contract in the same way and to the same extent as he would be required if Weir had remained in the enterprise. So far as appears, the defendant has received the same benefits and advantages from the plaintiff's services that he would if Weir had remained. If the plaintiff has done all that he agreed to do in order to earn the compensation stipulated, and was not a party to any of the changes that took place with respect to the agencies through which the end sought by the defendant was to be attained, and that end has in fact been attained by the reorganization and completion of the railroad, it is not apparent how the plaintiff can in justice be deprived of all right to compensation, merely because the defendant did not accomplish the result in the manner and by the agencies first chosen, but by other agencies which were substituted in place of those first selected.

There is a principle in the law of contracts that where performance depends upon the continued existence of a person or thing which is assumed as the basis of the agreement, the death of the person or the destruction of the thing terminates the obligation. (*Lorillard* v. *Clyde*, 142 N. Y. 456.)

The principle applies to a peculiar class of contracts, and the one here in question does not, we think, fall within it. Here the defendant is a party to an agreement in which it has been stipulated that certain property in the form of railroad securities shall be delivered to the plaintiff as a consideration for his professional services in the matter of reorganization, when perfected and when the railroad is completed. The time for performance arrived when these events took place. The plaintiff, as we must assume, has performed his contract

and rendered the services, and the defendant has had the benefit of them, but insists that he has been discharged from all of his obligations to deliver the securities for the sole reason that the end was not attained according to the precise scheme marked out originally by the parties in interest.

In order to get a clearer view of the principle upon which the judgment rests, it may be useful to know just what occurred in this case after the execution of the contracts referred to.

It appears that on July 8th, 1887, the defendant entered into a contract with a construction company in which he was interested, and of which Weir was the president, for the completion of the railroad for the bonds. This contract was intended to take the place of the one with Weir. The latter, as president of the construction company, executed it with defendant, who represented the interest of the railroad. By the terms of this agreement, a large amount of the bonds was to be delivered to the defendant and to other parties, and it contained a clause which bound the construction company to assume and pay all liabilities incurred by the defendant for legal services rendered and to be rendered in connection with said railroad, and the reorganization of the same.

The defendant was a consenting party to this arrangement, though it does not appear that as yet Weir had made any actual default on his part. At all events, the time had not yet arrived for displacing him for failure to perform, which by the contract was fixed at four months after the reorganization. That event was no doubt anticipated and acted upon in advance.

While the organization of the construction company by defendant and Weir and the preparations for this contract were under way, the plaintiff wrote to the defendant asking him how the proposed change in the scheme would affect his contract, and if he needed anything by way of ratification from the company. The defendant replied that he did not see that the agreement between them needed any ratification for the present; that after he purchased the road and they were

ready to turn it over to the construction company "then we shall have to make provision for all obligations we have assumed." These letters were exchanged under date of February 22d and 23d, 1887, over four months before the contract with the construction company was made, and when made these obligations were assumed by the company, as we have seen. The enterprise was still to have the benefit of Weir's experience and ability as a railroad man through the construction company as its president. In November, 1887, however, Weir was paid a considerable sum of money to sever his relations with the construction company, and he resigned as president, and from that time his connection in any form with the project ceased. But the defendant was a party to this movement, not only consenting, but a prime mover in bringing it about. The new arrangement between the defendant and the construction company did not work satisfactorily, and on the 28th of June, 1888, by formal instrument in writing between that company and the defendant, it was canceled, and the parties by mutual releases absolved each other from all duties and obligations under it, upon the terms and conditions therein specified. These terms and conditions are set forth in the writing at length, and embrace provisions for the issue of bonds and stock of the railroad and the distribution thereof between the parties. There is one clause in this agreement that has some bearing on the present controversy. After canceling the agreement it was provided that there should remain no duty on the part of the construction company to deliver "any cash, shares of stock or bonds to any of the persons or corporations named in said agreements, but that to the extent that there shall be a duty on the part of any one to make such payments or deliveries, the same shall be binding only on those whose duty it was to make them prior to the execution of said canceled agreements."

Now, prior to that time, the defendant was at least one of the parties, if not the sole party, upon whom the duty of satisfying the plaintiff's contract devolved, and by this settlement he was remanded to the position with respect to this contract

that he originally occupied. The railroad was completed in December, 1889, through its own corporate action. The defendant practically owned and controlled it, and hence the agencies employed for the purpose must have been substantially of his own selection. He received the bonds and the stock contemplated in the original agreement. Whether more or less than he would have received if that agreement had been carried out to the letter does not appear, but he certainly received property in kind, amount and value to enable him to satisfy the contract with the plaintiff.

We think that the construction which the learned referee placed upon the contract with the plaintiff, which, in substance, was that his right to the stock and bonds was wholly dependent upon the continued presence in the enterprise of Weir, as a party to the original contract, was erroneous. The retirement of Weir, under the circumstances of this case, did not cancel the defendant's obligations to the plaintiff. The plaintiff's contract was not so far dependent upon the other contract made on the same day, that the former could not exist and be performed after the abandonment of the latter. So long as the plaintiff's contract was capable of performance under the new arrangements, or under the methods by means of which the defendant finally accomplished the desired result, and it was performed, and the defendant had the benefit of his services, there is no good reason why he should not be held bound by it. It would be unjust to permit the defendant to employ counsel to assist in a scheme for the reorganization and completion of a railroad, and take the benefit of his services and then repudiate his obligations to make the compensation agreed upon because he had himself changed the agencies for completing the work, or consented to such change without changing the plaintiff's obligations or duties. The defendant was engaged in a business project in the prosecution of which he required the professional assistance of the plaintiff. The necessity for the plaintiff's services, so far as appears, continued notwithstanding the changes in the methods of carrying out the original

37

scheme, and if the plaintiff rendered them, or held himself in
readiness to render them, it is not apparent how the defend-
ant can escape all obligation to make compensation.

As a general rule, the obligations of a contract cannot be
abrogated by the acts of one of the parties to it. Since they
are mutually binding on both parties, one side cannot be
released without the consent of the other, express or implied.
The defendant was a consenting party to the various changes
made in the original scheme for reorganizing and completing
the railroad, but the plaintiff was not. He still remained
bound by his contract to render the services whether Weir or
some other agency was used by the defendant to accomplish
the end in view. When some other agency was substituted by
the defendant in Weir's place, that did not release the plaintiff
from his obligations. He was still liable to be called upon by
the defendant, acting with these substituted agencies, to do all
that he had agreed to do. He was not at liberty to take
employment from any opposing or hostile interest, and it is
difficult to conceive how he could have remained bound and
the defendant discharged.

As the plaintiff's duties and responsibilities remained unaf-
fected by the changes so did the corresponding obligations of
the defendant.

We confine our view of the case entirely to the ground upon
which the learned referee placed his decision, namely, the effect
upon plaintiff's rights, under his contract, of the failure by
Weir to perform his with the defendant, or the abandonment
of that contract by the parties to it.

The learned counsel for the defendant argues that the plain-
tiff has not in fact performed any services under his contract.
The referee did not entertain this theory of the case, and his
twenty-fourth finding seems to negative the proposition. The
plaintiff was bound to show performance on his part before
specific performance could be decreed. He was bound to
show that he rendered all the services that were required of
him by the defendant or any one else who had the right to
demand the services under his written contract. If the defend-

· ant is chargeable only with a breach of the contract or a mere refusal to allow plaintiff to perform, the remedy may be at law for damages.   Whether the plaintiff has adopted the proper form of action or has the proper parties before the court, are questions which were not decided below and are unnecessary to discuss here.   The decision of the referee seems to have been upon the assumption that the plaintiff had performed on his part, but that the defendant was not liable, for the reason that Weir disappeared from the enterprise.   We prefer to dispose of the case upon this point, and since, in our opinion, the learned referee erred with respect to a fundamental question, the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.