(51 Misc. Rep. 270.)

### COLUMBUS TRUST CO. v. MOSHIER.

(Supreme Court, Special Term, Orange County. July, 1906.)

CORPORATIONS—DIVIDENDS—GUARANTY—CONSTRUCTION—CONTINUANCE.

Defendant guarantied payment of a semiannual dividend to plaintiff on certain corporate stock of 3 per cent. for 10 years or until his stock was purchased. In pursuance of such contract, the stockholder, who was treasurer of the corporation, resigned his office and surrendered his stock and certain accrued dividends. *Held* that, the corporation having been dissolved and its corporate rights forfeited, defendant was no longer liable on his guaranty.

Action by the Columbus Trust Company against George Moshier, on a contract to guarantee payment of dividends on corporate stock. Judgment for plaintiff.

Walter C. Anthony, for plaintiff.

R. H. Barnett, for defendant.

BURR, J. On the 13th day of August, 1902, the defendant, for a good and sufficient consideration, entered into an agreement with James Harrison, who was at that time the owner of 155 shares of the preferred stock of the Chadborn Manufacturing Company, by which the defendant guarantied that the said James Harrison should be paid at the end of each and every six months a dividend of 3 per cent. (being the sum of four hundred and sixty-five dollars [$465]) upon said stock until the same should be purchased from him pursuant to a contract for the sale thereof entered into by the said Harrison, and bearing date the 1st day of August, 1902. The agreement was not to run, however, exceeding a period of 10 years. Sums equal to a dividend of 3 per cent. semiannually upon the said capital stock were paid up to the 1st day of July, 1904. No payments were made subsequently to that date. On the 4th day of April, 1905, in an action brought by the people of the state of New York against the Chadborn Manufacturing Company, judgment was entered dissolving the said corporation, forfeiting its corporate rights and enjoining the trustees and directors of the said company from again exercising its franchises, powers, rights, or privileges. About the 27th day of August, 1902, the said stock and the said agreement were assigned to the plaintiff in this action, who thereupon became trustee of an express trust created thereby and in connection therewith. This action was brought to recover the amount claimed to be due on the 1st day of January, 1905, and on the 1st day of July, 1905. The plaintiff, as trustee of such express trust, had authority in its own name to commence this action. Code Civ. Proc. § 449. The only question involved in this case is whether the agreement referred to survived the corporate life of the said Chadborn Manufacturing Company.

There is no express provision in the agreement referred to which makes the continuance of the corporate life of the company a condition precedent to the right to enforce the provisions thereof. As a general rule the unqualified undertaking of a party to perform an act is not to be excused because the situation existing when the contract was made did not continue to exist at the time stipulated for performance. Labaree Co. v. Crossman, 100 App. Div. 501, 92 N. Y. Supp. 565; Lorillard v. Clyde, 142 N. Y. 456, 37 N. E. 489, 24 L. R. A. 113. This rule, however, is not without exceptions; and, where performance depends on the continued existence of a given person or thing and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation. Lorillard v. Clyde, supra; Babbitt v. Gibbs, 150 N. Y. 281–286, 44 N. E. 952; Herter v. Mullen, 159 N. Y. 28, 44, 53 N. E. 700, 44 L. R. A. 703, 70 Am. St. Rep. 517; Matter of Daly, 58 App. Div. 49, 68 N. Y. Supp. 596. In such cases the courts have implied a condition in the contract that a party is relieved from its terms when its performance has, without his fault, become impossible. Herter v. Mullen, supra.

The agreement executed by the defendant states as part of its consideration the agreement executed by the said James Harrison, annexed to it and hereinbefore referred to. In determining, therefore, the character and extent of defendant's obligation, it becomes necessary to refer to each of those agreements. The annexed agreement is one made by the said Harrison with other stockholders of the Chadborn Manufacturing Company. By its terms he agreed to resign his position as treasurer, director, and manager of the said company, to surrender the said 155 shares of stock to the Columbus Trust Company, to waive all his rights, powers, and privileges thereunder, as well as under a certain agreement dated March 2, 1901, and to cancel all dividends due on the stock up to July 1, 1902. The surrender of the stock and the resignation of his position resulted in depriving him of the active management and control of the company, which he had previously exercised. In consideration thereof he was to receive an agreement of guaranty executed by the defendant in this action. The terms thereof were specified and were the same that were contained in the agreement which is the subject of this action.

I think it is clear that it was within the contemplation of both parties that the corporation should continue to exist during the life of the contract of guaranty, and that an implied condition should be read into the contract to that effect. The agreement was not to pay a sum equal to the amount of a dividend, whether declared or not, but was a guaranty that dividends should be paid. The payment of a dividend necessarily implies the existence of a corporation. The word "dividend," when used in connection with corporate stock, means a proportionate part of the profits which have arisen from corporate transactions. They are payable out of profits alone. Taylor Priv. Corp. §§ 563, 565; 2 Purdy's Beach Priv. Corp. §§ 451, 453. Again, the agreement had reference to the sale of the capital stock in the company. Capital stock is the interest which the members of a corporation (the stockholders thereof) have in the property of the corporation. 1

Purdy's Beach Priv. Corp. § 184. When the corporation ceased to exist and its property was distributed, there was no longer any capital stock. When the corporate stock was wiped out, of necessity there could be no profits from corporate transactions, nor any possibility thereof. Without the possibility of profits from corporate transactions, there could be no possibility of dividends. The contract of guaranty did not fix a specific amount which Mr. Harrison was to receive. It provided that he should receive at least 3 per cent. dividends. But, so long as he remained the owner of the stock, he or his transferee, if he had transferred the same, would be entitled to receive all of the dividends earned and declared on such stock. If such dividends amounted to 10 per cent. semiannually, the holder of the stock would be entitled to receive that. If it amounted to only 2 per cent. semiannually, the holder of the stock would receive that amount from the company and could then hold the guarantor for the difference between the 2 per cent. dividends received and the 3 per cent. dividends guarantied. This being so, the implied condition above referred to must be read into the contract, and it must be presumed that the parties contracted with reference to the continued existence of the corporation. Since this was the basis of the agreement, the destruction of the corporation terminated the obligation. This seems to me to be true both upon principle and authority. Mason v. Standard Distilling & D. Co., 85 App. Div. 521, 83 N. Y. Supp. 343; Lorillard v. Clyde, supra.

This case is distinguishable from the case of Kinsman v. Fisk, 37 App. Div. 443, 56 N. Y. Supp. 33. In that case no judgment of dissolution had been entered prior to the time when the action was brought. Id. 449, 56 N. Y. Supp. 33. There is no claim in this case that the defendant in this action was in any manner responsible for the acts which resulted in the judgment dissolving the corporation. He is not, therefore, estopped from claiming that his agreement has terminated. Being a contract of suretyship, when the meaning and intent of the parties is determined, the contract must be strictly construed. The only default, therefore, which arose prior to the entry of judgment destroying the corporate life of the company, which is the only default for which this defendant is responsible, was that on the 1st day of January, 1905. This measures the extent of his obligation.

Judgment is therefore directed for the plaintiff for the sum of $465, with interest from the 1st day of January, 1905.

Judgment for plaintiff for $465, and interest from January 1, 1905.