Mail & Express Company, Inc., Respondent, v. Hamilton Garment Co., Inc., Appellant.

Supreme Court, Appellate Term, First Department, July 9, 1926.

**Contracts — newspaper advertising agreement — defendant contracted for publication of advertisement in New York Evening Mail — consolidation of Evening Mail and New York Evening Telegram prevented plaintiff from publishing advertisement pursuant to contract — defendant was entitled from business standpoint to determine newspaper it selected for advertising purposes — complaint dismissed.**

In an action by the plaintiff against the defendant, with which it had contracted for the publication of the defendant's advertisement in the New York *Evening Mail*, predicated on defendant's failure to insert the number of lines of advertising which defendant agreed to cause to be inserted, the complaint should be dismissed, since it appears that by reason of the consolidation of the *Evening Mail* with the New York *Evening Telegram*, the plaintiff itself destroyed the subject-matter in reference to which the parties contracted and prevented itself from carrying out the contract; defendant had the right, from a business standpoint, to determine in what newspaper it desired the advertisement published.

Levy, J., dissents, with opinion.

APPEAL by defendant from a judgment of the City Court of the City of New York, after trial before the court, the jury having been waived by consent of both parties, and entered in favor of the plaintiff for the sum of $1,522.56.

*Bandler, Haas & Collins* [*John F. Collins* and *Arthur C. Kahn* of counsel], for the appellant.

*Herman B. Goodstein* [*Walter Lloyd Smith* and *Thomas J. Kavanagh* of counsel], for the respondent.

DELEHANTY, J. The defendant contracted for the publication of its advertisement in the *Evening Mail*. The plaintiff by its own act, in the consolidation of the *Evening Mail* with the *Evening Telegram*, created an entirely different newspaper, both as to its policy and material form, and thereby destroyed the subject-matter in reference to which the parties contracted and prevented itself from carrying out the contract between the plaintiff and the defendant. It is common knowledge that there are numerous daily and evening newspapers published in the city of New York, each conducted under its distinctive policy as to the collection and dissemination of news, its advertising features, and general reading matter, for the purpose of soliciting subscribers from the public. Some of the main features of the *Evening Mail* were not continued in the consolidated newspaper and this might readily lead to the

defendant's advertisement not reaching the persons it contemplated when it made the contract for the insertion of the advertisement in the *Evening Mail.* The defendant had never advertised in the *Evening Telegram.* From the various evening papers it selected the *Evening Mail* as the one in which it deemed it most expedient from a business standpoint to insert the advertisement. The defendant had and has the right to determine in what newspaper it shall have the advertisement published. It contracted, it may be assumed, on the presumption that the *Evening Mail* would continue in existence under the same conditions and policies as were in force at the time it made its contract.

Judgment appealed from reversed, with costs, and judgment directed in favor of the defendant dismissing the complaint on the merits, with costs.

LYDON, J., concurs.

LEVY, J. (dissenting). As the prevailing opinion does not disclose the full facts of the case, it may not be amiss to furnish them, so far as they are deemed necessary, in these expressions of dissent. On August 28, 1923, the plaintiff and defendant entered into a contract, by the terms of which the latter agreed to insert " in the *Evening Mail,*" a daily newspaper then published in the city of New York, 100,000 or more lines of advertising within one year from September 28, 1923, at twenty-one cents per line. In the event that less than the minimum fixed should thereafter be inserted, defendant was to pay the rate prevailing at the time of the contract for the number of lines actually consumed. Defendant failed to insert 100,000 lines and plaintiff sued for the difference between the amount paid at the 100,000-line rate and the sum which should have been paid, calculated upon the basis of the arrangement.

It appears that on January 26, 1924, the *Evening Mail* was consolidated with the *Evening Telegram,* another daily newspaper then published in the city, and the name of the newspaper thereafter appearing was changed to the *New York Telegram & Evening Mail.* The plaintiff still continued to be the publisher after the consolidation. Defendant contended that such combination of the *Mail* and *Telegram* put an end to the existence of the *Evening Mail,* and that it was, therefore, impossible for defendant to have offered further advertising to the *Evening Mail* as such. It may be noted that defendant did not present any advertising matter after November 20, 1923, although the consolidation did not take place until almost two months thereafter. However, it was under no obligation to advertise at any particular time as long as it inserted

at least 100,000 lines by the end of the contract year. Defendant seeks to avoid the agreement on the ground that the paper in which it stipulated to insert its copy had ceased to exist. The important question here is whether the consolidation of the *Evening Mail* with the *Evening Telegram* and the succeeding publication of a newspaper under the new name was such an alteration of the continued situation contemplated by the contracting parties, as to relieve defendant of its obligation. Judge DELEHANTY in writing for the majority, holds that the plaintiff by its own act, " created an entirely different newspaper, both as to its policy and material form, and thereby destroyed the subject-matter in reference to which the parties contracted * * *." As there is an utter absence of authority involving the precise point, the question will have to be solved entirely on principle. The cases cited in the briefs which deal with impossibility of performance by reason of the destruction of the subject-matter, such as the leading English case of *Taylor* v. *Caldwell* (3 B. & S. 826) and *Lorillard* v. *Clyde* (142 N. Y. 456), are of no assistance, because they are concerned with situations arising through no act or default of either party. Here, the right of plaintiff to recover must be tested by its compliance or ability to comply with all the conditions precedent on its part. Was the continued existence of the newspaper under its original name and with its original features such a condition precedent? After considerable effort at research, I have discovered no case which dwells directly upon the question. However, a decision in Missouri may have some bearing. (*Sheffield* v. *Balmer*, 1 Mo. App. 176.)

It seems to me that the mere alteration of the name would not in itself necessarily destroy the medium. I admit, it would have the tendency to impair the circulation because persons accustomed to purchase it under its old name might be confused by the change. Still, changing from the *Evening Mail* to the *New York Telegram & Evening Mail* would no more relieve the defendant from its contract than shortening the former name from *Mail & Express* to the *Evening Mail* could have affected the obligation of the then advertiser. The value of the name of a newspaper may be considered by way of comparison with that of a trade-marked article of merchandise, although it is of less moment in the former case. Where a manufacturer changes the name of such an article, the distributor with whom he is under contract very likely has a just ground for grievance, due to a possible loss of sales by reason of the consumer's probable unfamiliarity with the change. In the instant case, however, full publicity was given to the change by retaining the names of the constituent newspapers. The circulation of the paper under its new name substantially exceeded that

of the *Evening Mail,* so that the defendant could have no complaint on that score.    But the point is made in the prevailing opinion that because of the elimination of some of the main features, the defendant's advertisements might not reach the persons it contemplated.    Where is the proof of this?    I can find none in the record.

An examination of the paper as it was published at the time of the trial indicates a variation in the external appearance, the absence of some features present in the old issue, and the incorporation of new departments.    These deviations, wide though they may be, are not in themselves controlling.    Thus, if the old *Evening Mail* management had decided to change the appearance of the newspaper makeup, to eliminate a number of its features and substitute others in their place, these alterations might not necessarily have been just ground for the termination of advertising contracts.    To be sure, instances may be pointed out where an advertiser might establish that the agreement was entered into on the implied condition that certain departments were to continue during the life of the contract.    For example, where a manufacturer of a food product entered into an agreement for the advertising of his wares and the inducement for such arrangement was the conduct of a pure food column by the paper, the elimination of this feature might constitute ground for rescission; and if the contract were specifically for the insertion of the advertising matter on the pure food page of the paper, the abandonment of this page would doubtless relieve the advertiser from his obligation to continue. But in these cases the merchant contracts with reference to a fixed condition or situs which cannot be satisfied by the substitution of another which may be of radically different character.    The advertiser who contracts for billboard space on Fifth avenue and Forty-second street in the city of New York, obviously, cannot, because of lack of availability of that very space, be compelled to accept similar accommodation at Tenth avenue and Forty-second street, or First avenue and Forty-second street, or in parts of the city even more remote.    The continued name of the newspaper may or may not be such a fixed condition, but because of a failure of specific evidence as to the material effect of the change of name upon the advertiser's interests, one cannot positively say that by force of law the advertiser becomes relieved.

The case of *Sheffield* v. *Balmer* (*supra*) is one presenting some analogy, and the question arises whether the disposition in that instance is impelling.    There an advertiser agreed to insert an advertisement in the St. Louis *Home Journal* in the weekly edition every Sunday, for one year.    At the time the contract was made there

were two editions, one on Saturday, the other on Sunday. These were finally consolidated, while the contract was partly performed, and the advertisements were thereafter printed in the new edition which appeared only on Saturday. The advertiser demanded to have the contract ended, but the publisher declined and suit was brought to recover the price. The court said (at p. 178): " If defendants, knowing of the consolidation, had explicitly or impliedly authorized the insertion of the advertisements in the Saturday edition, plaintiffs might recover a reasonable price for such services. But, clearly, this was something very different from what the defendants bargained for." In that case it was proved, however, that the Saturday edition reached a different public from the one served by the other, and the merger, it seems to me, was, therefore, properly deemed a termination of the advertiser's obligation. As there was no such showing here, I do not consider that the case avails the defendant.

It is my view that the alterations did not, as matter of law, destroy the subject with reference to the continued existence of which the contract was entered into, and that plaintiff was fully able to perform. Hence, I dissent and vote to affirm.