MAE L. BREARTON, Respondent, *v.* CORA E. DEWITT and Another, as Executors, etc., of ELDEN C. DEWITT, Deceased, Appellants.

First Department; May 24, 1929.

*Caruthers Ewing* of counsel [*Loucks, Griffin, Connet & Cullen,* attorneys], for the appellants.

*Jay Noble Emley* of counsel [*Bernard H. Sandler,* attorney], for the respondent.

Proskauer, J. On motion for judgment on the pleadings the Special Term has sustained the complaint in this action. The defendants appeal. The complaint, as limited by the bill of particulars, sets forth that, for some undisclosed reason, in February, 1919, Elden C. DeWitt inoculated the plaintiff with the germs of serious disease and that six years thereafter she entered into an agreement with DeWitt. Its terms were that she promised " to give up, and isolate herself from her friends, to give up the position that she then had, abandon her occupation and all other callings and forms of livelihood, and thenceforth to consent to, and subject herself to, the control of the said Elden C. DeWitt and the cures and treatments to be administered to her by, and under the supervision and direction of, the said Elden C. DeWitt." In consideration of this promise DeWitt agreed to pay her $1,000 a month for life. About sixteen months thereafter DeWitt died, and the defendants, executors, have refused to make payment pursuant to this promise.

The appellants contend that the relationship created by this contract is so essentially personal in its nature that no obligation could survive the death of the promisor. The respondent rests upon the argument that the contract does not in terms call for the performance of any personal service by DeWitt, that plaintiff was to subject herself to such cures and treatments as DeWitt might direct, but that DeWitt was not required to direct any. In this argument respondent misconceives the basis upon which death is held to terminate liability under personal contracts. Examination of the authorities justifies the statement in *Dickinson v. Calahan* (19 Penn. St. 227, 231) that " no one can trace up this branch of the law very far without becoming entangled in a thicket, from which he will have difficulty in extricating himself." But it is clear that the authorities do not go to the extent of requiring promise of personal action on the part of the decedent as the condition for declaring the contract terminated by his death. The rule of the older cases is exemplified in *Babcock v. Goodrich* (3 How. Pr. [N. S.] 52). There the General Term of the Third Department affirmed a decision and approved an opinion of Follett, J., at Special Term, in which he stated:

" The performance of this contract by the plaintiff required the exercise of personal skill and knowledge, and it could not have been performed by substituted service. Had the plaintiff died during the performance, his representatives could have recovered for his services already rendered. * * *

" As a general rule, if a contract is so far personal that the representative of one of the parties to it is not responsible in damages

for refusing to complete its performance, the representative of the other party is not so responsible for a like failure, in the absence of evidence of intention to bind the representative."

The effect of this decision was to hold that every contract of personal service, in the absence of expressed intention to the contrary, was terminated by the death of the employer or promisor. It may well be that Professor Williston's contention for a more liberal rule is justified by later authority and considerations of equity. The limit of his contention, however, is that "If the character of the employment was such that the employer had free power to delegate the oversight of the work to another and no personal cooperation on his part is needed for the proper fulfilment of the contract, there seems no reason why his death should affect the continued obligation of the contract." (3 Willis. Cont. p. 3299.)

The test is, not whether the promisor covenanted to do a personal act, but whether "when performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation." (*Lorillard* v. *Clyde*, 142 N. Y. 456, 462.) And the rule is stated in 1 Mechem on Agency (2d ed. p. 476): "Most contracts for personal service so evidently involve personal considerations and are so clearly dependent upon the continuance of the lives of the parties, as to be fairly subject, where no express provision is made, to the implied condition that the death of the principal or master as well as that of the agent or servant shall terminate the contract without liability."

Here a vital term of the plaintiff's obligation was to subject herself to cures and treatments to be administered to her by or under the supervision and direction of Elden C. DeWitt. It was of the essence of the arrangement that such treatment or direction for treatment was to come from DeWitt personally. It would be inconceivable that the plaintiff by her covenant meant to subject herself to treatment determined by DeWitt's executors. Even though DeWitt did not specifically covenant to give or advise treatment, the inevitable inference is that plaintiff's performance in this respect was conditioned upon the survival of DeWitt and the consequent continuance of the possibility of the performance of her covenant to follow his directions. The mere circumstance that his covenant was to pay her a monthly stipend for her life does not evidence an intention to continue that obligation beyond his death. Indeed, in *Marvel* v. *Phillips* (162 Mass. 399) a clause specifically providing that executors should be liable under the contract was held insufficient to continue obligation after death

where the relationship was necessarily personal. It is not to be presumed that DeWitt's intention was to give the plaintiff this stipend for her life if, as here happened, within a very short time after the agreement was made he himself died, and the plaintiff was no longer able to perform an important part of her obligation.

For these reasons the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint granted, with ten dollars costs.

MERRELL and MARTIN, JJ., concur; FINCH and O'MALLEY, JJ., dissent.

O'MALLEY, J. (dissenting). The cases cited in the prevailing opinion correctly state the law. The rule of those cases, however, applies to purely personal service contracts. Here, in addition to personal service we have a non-personal element, the obligation to pay money which is founded upon a consideration fully executed upon plaintiff's part.

Let us suppose that the promise of the deceased so far as personal service was concerned had been limited to a term of five years and the plaintiff had agreed to submit herself to his direction for such period. At the expiration of such term both parties would undoubtedly be relieved from the obligation of the personal service involved. Could it reasonably be contended, however, that the obligation of the deceased to continue payments to the plaintiff for her life would likewise cease? Why should a different rule apply merely because the term set for the rendition of the personal end of the agreement was limited not to any specific term but to an indefinite term measured by life? Or let us suppose that the promise with respect to the monetary consideration had been not for periodic payments extending during plaintiff's life, but for a lump sum of $10,000, for example. Could it reasonably be contended that by dying the promisor would escape the liability of making the $10,000 payment?

In this view I think the complaint states a cause of action. I, therefore, vote for affirmance of the order.

FINCH, J., concurs.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.