### In re CIVIC et al.

Circuit Court of Appeals, Second Circuit.
July 3, 1929.

No. 289.

David W. Kahn, of New York City, for appellants.

Francis J. McManamy, Jr., of New York City, for appellee Weingarten, Toplan & Co.

Epstein & Brothers, of New York City (A. J. Brothers, of New York City, of counsel), for appellee Stone & Co.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). The question that meets us at the threshold is, What was the contract of the parties? There seems to have been no reason why they could not have made any agreement that they chose. If Civic & Co. wished to sell, and the claimants wished to buy, any sort of rights which the consolidated bank might offer to its shareholders, either directly or through a stockholders' committee, irrespective of any modification which might be made in the original plan, there would seem to have been no legal difficulty. But such a contract would be unlikely, and, if the plan finally adopted was far enough from the plan originally proposed, it would be hard to imagine that the contracting parties had agreed to deal in rights which had so utterly changed since the contract was made.

Here was a plan that had been adopted by the bank directors on March 27, and was the only plan agreed upon prior to April 4 by any one in authority. It seems reasonable to believe that this plan was the basis for the sales of rights to the claimants on March 29, 30, and 31. It is not necessary to say that a change in the subscription price which would involve the payment of $125, instead of $110, per share for new stock of the consolidated bank, would be sufficient to avoid an agreement to purchase rights entered into under the broad terms of "if, as, and when issued." But the original plan, which was the only one definitely in existence when the contracts were made, contemplated nothing more than the purchase of additional stock in an established national bank. The new plan required the purchase of units, including not only the additional stock of the consolidated bank, but an equal number of shares of a new and presumably more speculative corporation.

The evidence shows that the seller was contracting with reference to the old plan, for the articles in the Times and Tribune seem to have been his only source of information. The buyers offered no testimony indicating that they had any other plan in mind when they made their purchases. An investigation by any of the parties would apparently have showed that at the time there was no other plan in existence having any authoritative sanction. We think it reasonable to suppose that both sides contracted with reference to the original plan, and that the words "as issued" related to rights to purchase stock of the consolidated bank, and did not include rights or obligations to purchase units which comprised shares of the consolidated bank and the Bankameric Corporation. Any other interpretation of the contract involves too fundamental a change in the subject-matter to have been within the contemplation of the parties. National Contracting Co. v. H. R. W. P. Co., 192 N. Y. 209, 84 N. E. 965. In Lorillard v. Clyde, 142 N. Y. 456, 37 N. E. 489, 491, 24 L. R. A. 113, it was said by Chief Judge Andrews that: "When performance depends on the continued existence of a * * * thing, and such continued existence was assumed as the basis of the agreement, * * * the destruction of the thing puts an end to the obligation." Here the rights purchased never issued, but something entirely different. In such circumstances, and because of the action of third parties in adopting a new and different plan, the contract had nothing upon which to operate and was consequently at an end.

The order is reversed, and the proceeding remanded, with directions to disallow both claims.