*530 OPINION OF THE COURT
Robert F. Doran, J.
Plaintiff Kel Kim Corporation and defendants, Central Markets, Inc. and Golub Properties, Inc., executed a lease on February 22, 1980 of a vacated supermarket in Clifton Park, New York. The individual plaintiffs are guarantors of the lease. It was the understanding of the parties at the time the lease was signed that plaintiffs would use the premises as a roller skating rink.
The lease contains two provisions which are of importance to the dispute between the parties. Article 11 requires that the lessee: "shall procure and maintain in full force and effect a public liability insurance policy or policies in a solvent and responsible company or companies.. .of not less than Five Hundred Thousand ($500,000.00) Dollars to any single person and in the aggregate of not less than One Million ($1,000,000.00) Dollars.”
Article 23, the force majeure clause, qualifies the performance of the parties as follows: "If either party to this lease shall be delayed or prevented from the performance of any obligation through no fault of their own by reason of labor disputes, inability to procure materials, failure of utility service, restrictive governmental laws or regulations, riots, insurrection, war, adverse weather, Acts of God, or other similar causes beyond the control of such party, the performance of such obligation shall be excused for the period of the delay.”
Plaintiffs were in full compliance with the lease from the time it was signed in 1980 until January 6, 1986. At that time, the insurance company from which plaintiffs had obtained their liability insurance refused to renew the policy. Upon notice of the termination, plaintiffs attempted to locate the required insurance. Plaintiffs’ proof is that, due to the present crisis in all areas of liability insurance, there are no carriers writing liability insurance for roller skating businesses in excess of $500,000, an amount plaintiffs have been able to obtain. However, plaintiffs have been unable to locate any company which will write a $1,000,000 aggregate policy as required by the lease.
Defendants, upon learning of plaintiffs’ lack of insurance, served a notice of default on January 7, 1986. That notice stated that plaintiffs were in default for failure to comply with the section of the lease regarding liability insurance requirements. The notice provided 30 days to cure the default, after *531 which plaintiffs would be required to vacate the premises. Plaintiffs, at that time, instituted the underlying proceeding for a determination of the rights and obligations of the parties required by the insurance clause and as affected by the force majeure clause.
The court must first determine whether or not article 11, the insurance provision, is, in fact, a dependent or an independent covenant in the aforesaid lease. Case law has established that the issue of whether covenants are to be held dependent or independent of each other is to be determined by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication. The expressed intention and meaning is to be ascertained from the whole agreement. Dependence or independence of covenants may be determined by the order of time in which their performance is required. Clearly, article 11 aforesaid is an independent covenant upon which a party may sue for breach thereof without regard to whether or not that party has performed its covenants.
The force majeure clause of the lease, article 23, clearly covers only those situations specified therein. In the case at bar, plaintiffs are unable to obtain liability coverage beyond $500,000. However, failure to comply with article 11 of the lease does not fall within the force majeure provision. The situation becomes one of impossibility of performance, even though plaintiffs are ready, willing and able to perform all of the other terms and provisions of the lease.
Such intervening impossibility of performance has been caused by the happening of an unanticipated and unforeseen event, to wit: the inability to obtain the required liability insurance coverage as agreed to between the parties. However, such insurance provision of the lease was unequivocably agreed to by both parties and is independent of any other provision in the lease and the impossibility that has arisen is one that could have been foreseen and guarded against (see, Lorilland v Clyde, 142 NY 456). Thus, failure to comply with article 11 of the lease, with which defendants have demanded performance, renders the lease terminable and void (see, 407 E. 61st Garage v Savoy Fifth Ave. Corp., 23 NY2d 275, 281; Ogdensburg Urban Renewal Agency v Moroney, 42 AD2d 639; Garfield v Greenbaum, Wolff & Ernst, 103 AD2d 709, 713).
Upon the foregoing papers, it is ordered that the motion by defendants for an order granting summary judgment dismiss *532 ing the complaint and nullifying the lease dated February 22, 1980 between the parties is granted. The cross motion by plaintiffs for summary judgment in their favor declaring that plaintiffs are excused from complying with the requirements of article 11 of the written lease and are entitled to continued use, occupancy and possession of the premises is denied.