## HILDRETH *vs.* BUELL.

On the 27th of September, 1838, P. and others entered into a contract with the state for the construction of the ten combined locks on the canal at L. This contract being assigned by P. and others to the defendant, and D., the defendant, on the 15th of Sept. 1841, entered into an arrangement with the plaintiff, by which the latter was to furnish to the defendant all the iron castings necessary for the construction of the locks, &c. at specified prices, to be paid by the defendant whenever he should receive his pay, on estimates, from the state. The plaintiff accordingly furnished the castings, &c. for the north tier of locks and received his pay therefor. In May, 1842, the state suspended the work upon the locks, in pursuance of an act of the legislature. In July, 1847, W. B., jun. entered into a contract with the state for the construction of the south tier of locks, which contract was subsequently assigned to the defendant, who constructed those locks under such contract, procuring a portion of the castings from a person other than the plaintiff. In an action by the plaintiff, upon the contract of Sept. 15, 1841, to recover as damages the profits he would have made had the defendant procured all the castings, &c. from him, at the prices specified in such contract;

*Held*, 1. That when the state suspended work upon the locks, and thus put an end to its contract with P. and others, the contract between the plaintiff and the defendant, which was made with reference to such prior contract, also came to an end.

2. That the plaintiff could not, in an action upon the contract of Sept. 1841, recover damages of the defendant for not employing him to furnish the castings required for the construction of the south tier of locks.

3. That after the original contract with the state had been annulled, the same was not revived and made binding, by the act of the defendant in claiming and receiving from the plaintiff a portion of the castings required for the building of the south tier of locks.

4. That the original contract could only be revived, so as to be binding upon the defendant, by a new valid agreement; and if there was any new agreement, the action should be founded upon such new agreement.

MOTION for a new trial, by the plaintiff, upon exceptions. The action was tried at the Niagara June circuit, 1853, before Justice Harris. The action was upon a contract entered into between the plaintiff and defendant, Sept. 15, 1841, by which the plaintiff was to furnish to the defendant all the iron castings necessary for the construction of the combined locks at Lockport, and all wrought iron, &c. &c., at prices specified for furnishing the castings, iron, &c., and for fitting and putting them into their

proper places in the locks ready for use, under the direction and
to the satisfaction of the engineer having charge of the work.
Buell was to pay for the castings, &c., when he should receive
his pay, on estimates from the state for the same.   The plaintiff
furnished the castings, &c., pursuant to the agreement, for the
north tier of locks, and received his pay therefor.   The south
tier of locks was constructed between July, 1847, and July, 1849,
and the plaintiff furnished a portion of the castings and other
irons ;  the engineer having charge of the works calling upon the
plaintiff for them, because he had understood, both from the
plaintiff and defendant, that the plaintiff had a contract for fur-
nishing them.   And it also appeared that the clerk and agent
of the defendant made a bill of the castings, &c., furnished
by the plaintiff, and learned the prices of the articles from con-
versations with the defendant and from the contract.   For all
the articles furnished, the defendant paid the plaintiff the prices
stipulated in the contract.   It also appeared that the defendant
procured a portion of the castings from a person other than the
plaintiff; that the plaintiff could have furnished such castings,
and would have made a considerable profit thereon.   The ac-
tion was brought upon the contract, to recover as damages the
profits he would have made had the defendant procured all the
castings, &c. from him, at the prices specified in the contract.

    On the part of the defendant it was shown that Parmele and
others entered into a contract with the state, September 27, 1838,
for the construction of the ten combined locks at Lockport, to be
completed March 1, 1843.   Parmele and others assigned the
contract to Asa W. Douglass and the defendant.   The defendant
was to have the control of the work.   This contract contained
specifications, and the contractors were to furnish all mate-
rials.   The state suspended the work upon the locks in May,
1842.   William Buell, jun., in July, 1847, entered into a con-
tract with the state for the construction of the south tier of
locks, &c.   This contract was assigned by him to the defendant,
January 19, 1848, and the defendant constructed the locks under
this contract.   It contained specifications by which a portion of
the snubbing posts were to be cast iron.   By the contract of

1838 the snubbing posts were to be of wood. In each of these contracts there was a provision authorizing the state to make alterations in the form, dimensions, location, or *materials* of the work, &c. The plaintiff objected to the admission of these contracts with the state in evidence, and excepted to the decision admitting them. The plaintiff offered to prove that at about the time the contract between the plaintiff and defendant was made, the plan of cast iron snubbing posts was adopted. This evidence was excluded, and the plaintiff excepted. These cast iron posts were the articles that the defendant did not procure from the plaintiff for the south tier of works.

The court charged that the contract between the parties must be construed with reference to the specifications in the agreement between the defendant and the state at the time of making the contract between the parties. Also, that when the state refused to fulfill the contract with the defendant, under a law to suspend the public works, an end was put to the contract upon which the action was founded. The plaintiff excepted. The plaintiff requested the court to charge that if the contract between the parties was suspended or annulled by the suspension of the work by the state, the defendant, by claiming and receiving a portion of the castings from the plaintiff after that time and while acting under a new contract with the state, had revived the contract between the parties, and made it obligatory upon him; and that it should be construed with reference to the specifications contained in the contract under which the defendant was acting at the time he received the last castings, &c., which specifications covered the castings not obtained from the plaintiff. The court refused so to charge, and again held that the contract between the parties must be construed with reference to the first contract with the state, and directed the jury to return a verdict for the defendant. The plaintiff excepted.

*J. L. Bush*, for the plaintiff.

*Gardner & Fithian*, for the defendant.

Hildreth *v.* Buell.

*By the Court,* MARVIN, P. J.   The action was founded upon the contract of September 15, 1841, between the plaintiff and defendant, and that contract depended upon the contract of September 27, 1838, between Parmele and others and the state, and which had been assigned to the defendant.   In other words, the relation of the contract between these parties to the contract with the state for the construction of the locks was such, that when the state suspended the work and put an end to its contract, the contract between the plaintiff and defendant came to an end. (*Jones* v. *Judd,* 4 *Coms. R.* 412, *and cases cited.*)

There is no foundation for the position that the contract between these parties was made without any reference to the prior contract with the state.   If the contract had contained no reference to any other contract, or to any action or interest of the state in the subject matter of the contract, I should not hesitate to hold that the parties to it were affected by the action of the state in putting a stop to the work.   The Erie canal is a public work, constructed under public laws presumed to be known to all.   The construction of the ten combined locks at Lockport was authorized by public laws, and they were to be constructed on account of and for the state ; and we may presume that the plaintiff so knew, and that he knew that the defendant was not the owner of the locks, and that he was not building them upon his own private account, or upon the private account of any individual.   But the contract between the parties sufficiently indicated that the locks were being constructed by the defendant for the state.   Aside from references to engineers, it was provided that the defendant should pay the plaintiff for the castings, &c. whenever he should receive his pay on estimates from the state for the same.   This shows that the defendant was to receive payment from the state for the very articles to be furnished by the plaintiff.

The plaintiff was paid for all the castings, &c. furnished by him prior to the suspension of the work by the state in 1842, and *Jones* v. *Judd,* above cited, is directly in point to show that the contract between these parties was brought to an end ; and it seems to me that this view of the case puts an end to the

Hildreth v. Buell.

plaintiff's action.    The action is, upon the contract of September, 1841, not upon any subsequent contract.    It was entirely proper to admit in evidence the contracts with the state, and to show that the state had put an end to them ; and this evidence constituted a complete defense.    I do not think it material to inquire whether the construction given to the contract between the parties, as to what particular articles it embraced, was entirely correct, as, in the view I have taken, the action must fail. I think, however, that the decisions of the court were right.

The court was clearly right in refusing to charge as requested. If the plaintiff had counted, for his cause of action, upon a new contract, made with the defendant at the time the defendant was constructing the south tier of locks under the second contract made with the state in 1847, he might perhaps have had the right to have the question of such new contract submitted to the jury.    He gave some evidence tending to show a recognition of . the old contract by the defendant.    The defendant by his agent ordered castings, &c. from the plaintiff, and paid him therefor the prices specified in the old contract.    But it must be kept in mind that the old contract was at an end, and that it could only be revived, so as to be binding upon the defendant, by a new valid agreement, and, if there was any new agreement, the action should have been founded upon that.

There is nothing in the fact that the defendant became the contractor with the state under the first and second contracts. There was no connection between the two contracts.    The defendant was the assignee of each ; but had he taken the last contract from the state, himself, it would not have revived any contract between him and others which had been previously brought to an end by the action of the state.    I think the case was properly disposed of at the circuit, and a new trial should be denied.

[Erie General Term, May 15, 1854.    *Marvin, Bowen* and *Green*, Justices.]