Robertson, Ch. J.
(dissenting.) If the contract in question is to be construed as being merely for the delivery by the defendants, between certain days in August following, of a certain quantity of alcohol, of a certain degree of strength, then' liability may be conceded. Nor would they escape such liability, if such alcohol was required to be merely such as would be subjected to the duty imposed by the United States internal revenue act of July, 1862, in case it should take effect as originally prescribed therein, on the 1st of August, 1862. Because, in neither case, was there any impossibility of deliver *582 ing such alcohol. The difficulty arises from such revenue act not being in operation at the time of making such contract, and the time when it was to go into effect being contingent, in fact dependent upon the action of the secretary of the treasury, under the authority given to him by a joint resolution of congress, to postpone such time. Both parties were chargeable with knowledge of the existence of that authority, and the legal effect of its exercise upon the original act; because such-joint resolution was passed two days before such contract was made. And if such contract was made, either in terms or by intendment of law, in reference to the possible shifting of the time when such revenue law was to take effect by the action of the secretary of the treasury under such resolution, it became wholly void and inoperative: because it undertook to furnish in August, what could not have any existence until on or" after the 1st of September.
It may be conceded for the present, for the sake of argument,if no authority had been given, before making the contract in question, to the secretary of the treasury to postpone the time when the revenue act in question should take effect, but after the making of such contract, congress had, by a legislative act, postponed such time, that the defendants .would still have been liable to deliver at the time appointed, the same kind and quantity of alcohol, which would, if the statute had not been so modified, been deliverable under such contract. In other words, that the defendants would take all the risk, and the plaintiff none, in such case, of a changé by future, unforeseen and unexpected events of the value of the article, or its subjection to duties. Tet the principle applicable in such a case would not control the obligation of a contract made in reference to a law whose time of taking effect was then uncertain, for the delivery of articles to be subject to such law, at a time when it might not be in operation. The authority so to-be exercised by the secretary of the treasury, was not an ordinary authority, belonging to him by virtue of his office; but derived exclusively from the joint resolution, which might have selected any other mode of determining the time the act should *583 take effect. Congress could not delegate to him legislative power; the constitution does not provide for such delegation. Its exercise has the same effect as the assent of corporations or inhabitants of a locality to a law or action under it in order to make it binding, (Corning v. Greene, 23 Barb. 33 ; Bank of Rome v. Village of Rome, 18 N. Y. Rep. 38 ; Grant v. Courter, 24 Barb. 232 ; Starin v. Town of Genoa, 23 N. Y. Rep. 439 ; Gould v. Town of Sterling, Id. 456 ;) and its constitutionality must depend upon the same principle. It is equivalent to authorizing the secretary to license any and every distiller to manufacture alcohol without subjecting it to duty up to a certain time, after subjecting all alcohol to duty. The postponement, therefore, by such secretary of the operation of the law is not to be considered in the light of a subsequent legislative act, prohibiting the performance of acts previously agreed to be done, but as the determination of a contingency forming part of the law itself, and therefore a possibility within the contemplation of both parties when the contract was made.
The article required to be delivered by such contract was not only to be of a certain kind and strength, but to be delivered under the tax lato, which is conceded to be the act of congress in question, subject, of course, to the effect of the joint resolution, and .with duty paid. A subjection to duties under such act, was as essential a qualification of the article to be delivered as its quality or quantity. It clearly was as material, since the effect of the law, when in operation upon the price, would be, and proved to be, as great as any other element of its value. There is, therefore, no more ground for disregarding that qualification than any other. While, therefore, the defendants cannot claim to be discharged upon the ground that the action of the secretary of the treasury made impossible that which before was absolutely possible, they may claim that the contemplated contingency, which, if it had happened in a different way, might have enabled them to perform their contract, had, by happening the way it did, rendered it impossible. It is very plain that if, by the revenue act itself, or the action of the secretary of the treasury, before the *584 contract was made, the law was definitively not to take effect until the first of September, the defendants would have undertaken to perform an impossibility, to wit, to deliver in August under a tax law, what could not be created so as to come under it until September. It was uncertain, until the action of the secretary of the treasury, whether, under the contract, the defendants had undertaken a possibility or an impossibility, which the plaintiffs were bound to know.. And they were subject to the rule of law whieh makes a contract to perform an impossibility inoperative and void. Of course, difficulty, however great, unless unsurmountable, would not be sufficient.
The broker’s memorandum itself is loosely drawn,.and needs a reference to extrinsic facts and evidence by both parties, to render it certain, or interpret it. Thus the defendants agree thereby to deliver so many barrels of alcohol; A barrel of liquid measure is thirty-one gallons and a half; whalers evidence was admitted, (perhaps improperly—see Many v. Beekman Iron Co., 9 Paige, 188,) to prove that the contents of an actual barrel used to contain alcohol varied from forty to forty-four gallons. . The words and figures, “ At 45 cts. cash,” do not indicate the quantity sold for that price. “ Under the tax law,” does not clearly designate what law was meant. “ On board .vessel,” would not necessarily mean for export. With the-assistance, however, of the testimony of the broker who negotiated the sale, (Van Boskerclc,) and another one, (Coolidge,) some definiteness and precision is given to the terms of such memorandum. The custom of selling goods liable to .be taxed under the .revenue act in question, by two prices according as they were intended for domestic consumption or exportation, was fully established; short price being that without the addition of the duty,- and long price with the duty added. The broker who made the sale testified to a long conversation between himself and one of the plaintiffs and-one of the defendants, and that the former understood the matter perfectly xoell. The phrase, “ under the tax law,” was understood by both parties. It was understood these articles were to-be *585 manufactured under such law, and such phrase was understood to refer to the short price articles. The parties to the sale understood the matter perfectly well, that it was to be manufactured unddr the laio. This evidence was of course properly admitted to interpret the meaning of the parties. Not only the habitual use of words in a particular sense by an individual, (Wigram on Ev., p. 54, n. c. App. 1, p. 85, Jarmyn on Wills, 381-383,) as well as by persons of a particular trade or occupation or classes of persons or inhabitants of a particular locality, may be proved, (Shore v. Wilson, 9 Cl. & Fin. 555, per Parke, B.) but also surrounding circumstances, including the acts and declarations of the parties before making the agreement, have been admitted to render general terms specific, vague terms definite, and ambiguous terms certain. (Cole v. Wendel, 8 John. 116. Ely v. Adams, 19 id. 313. Almgren v. Dutilh, 5 N. Y. Rep. 28. Walrath v. Thompson, 2 id. 185. Agawam Bank v. Strever, 18 N. Y. Rep. 502. Perkins v. Goodman, 21 Barb. 218. Brinkerhoff v. Olp, 35 id. 27. Davis v. Talcott, 14 id. 611.)
The terms “ duty paid,” implied of course that the defendants were to pay the duty, and consequently to be entitled to its return in case the alcohol was afterwards exported. There can be no doubt, therefore, that in fact both parties entered into the contract under the supposition that no change would be made in the time when the revenue act should go into operation. The change may therefore be considered as an unexpected event, which, in a court of equity, if not at law, would discharge the contract. In the case of Quick v. Stuveysant, (2 Paige, 84,) lands actually conveyed by a deed, and not merely agreed to be by an executory contract, were ordered to be reconveyed, because they had originally been conveyed to carry out an agreement to lay out streets over the lands of both parties, the laying out of which had been subsequently prohibited by law. The reason 'assigned was, that while courts of common law only notice what voluntary acts are done, so that a deed would be effectual between the parties without regard to consequences, courts of equity consider every deed *586 as a mere means to accomplish an end, and if an unexpected result occurs to defeat that end, they will undo the effect of such deed, and restore parties. to their former position. By parity of reasoning, an executory contract to deliver an article contemplated by both parties to be dutiable under a certain law, which by a change in the law afterwards becomes not dutiable, should not be enforced, since the subject matter of the contract is substantially and unexpectedly changed. If no reference had been made to the law, both parties would have taken the risk of a change in it; but the express reference to it, shows the understanding of the parties that the only subject matter' of the contract was a dutiable article, (Hildreth v. Buell, 18 Barb. 107,) and not merely alcohol as a subject of commerce.
It follows, then, that whether the contract in question is to be construed as contemplating, and made subject to, the power of the secretary of the treasury, to relieve all alcohol made before the first of September from duties under the revenue law in question, and thus to render it impossible for the defendants to fulfill their agreement, or as looking only to such law taking effect without any change by such officer in the time thereof, the defendants were entitled to be relieved from the performance of such contract.
The liability of the alcohol to duty could not be waived by ■ the plaintiff, because it is not apparent that such qualification was intended to be exclusively for his benefit. The result of enforcing this contract against the defendants would be to • compel them to pay the duty of forty cents per gallon for that for which the)1" are to receive only forty-five, cents by the contract, or to make them pay in damages the long price, including the duty for what they sold at short price, and which, at that kind of price, was only worth the contract price on the day the plaintiff demanded it. It is, perhaps, not to be deprecated, that the law contains principles capable of preventing such injustice.
The judgment ought therefore to be reversed, and a new trial ordered, with costs to abide the event,
Judgment for the plaintiffs.