VAN BRUNT, P. J., PATTERSON and McLAUGHLIN, JJ., concurred; INGRAHAM, J., dissented.

Judgment reversed, new trial ordered, costs to appellant to abide event.

---

J. H. LABAREE COMPANY, Appellant, *v.* GEORGE W. CROSSMAN and HERMAN SIELCKEN, Respondents.

*Performance of a contract to sell merchandise — when excused by the refusal of the board of health of the port of delivery to allow it to be landed — in the case of what contracts, and under what circumstances, a contracting party is, and is not, excused from performance.*

The general rule is that the unqualified undertaking of a party to perform an act is not to be excused because some unforeseen contingency has rendered performance impossible.

This rule, however, does not apply to executory contracts for personal services, nor for the sale of specific chattels, nor for the use of particular buildings, where performance of such contracts has been rendered impossible by the death or sickness of the person who was to render the services or the destruction of the chattels agreed to be sold or of the building agreed to be let; nor does the rule apply if the law interferes and renders performance of the contract impossible.

The interference by law which will excuse the performance of a contract is not limited to interference by laws enacted or taking effect after the making of the contract.

The rule that persons must always be considered as contracting with reference to the law existing at the time of the contract is effective as to both parties to the contract, and if, by the operation of provisions of law existing when the contract was made, performance thereof is rendered impossible, the contract will be deemed dissolved, even though it did not contain a stipulation providing for such a contingency.

The general rule is that a party may by an absolute contract bind himself to perform things, the performance of, which subsequently becomes impossible, or pay damages for the non-performance, and such construction is to be put upon an unqualified undertaking where the event which causes the impossibility might have been anticipated and guarded against in the contract, or where the impossibility arises from the act or default of the promisor. But where an event is of such a character that it cannot be reasonably supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be held bound by general words which, though broad enough to include, were not used with reference to the possibility of, the particular contingency which afterwards happens.

Where, upon the arrival at the port of New York from an infected port of a cargo of coffee which had been sold in its raw state, under a contract providing for its delivery in the city of New York, the health authorities of the city of New York, although the cargo had previously been disinfected at quarantine and had been released, refuse to allow it to be landed in the city of New York unless the owners would permit it to be roasted under the supervision and direction of the health board, and disobedience of the order of the health board would be a misdemeanor, the vendor is excused from making strict performance of the contract by delivering the coffee in the city of New York.

He is, however, bound to make a tender of the best delivery possible under the circumstances, but if the vendees insist upon strict compliance with the contract, and refuse to accept delivery at any other place than the city of New York, the vendor is relieved from his obligation under the contract.

APPEAL by the plaintiff, the J. H. Labaree Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 7th day of December, 1903, upon the report of a referee dismissing the complaint upon the merits.

*Edmund L. Mooney,* for the appellant.

*John Notman,* for the respondents.

Judgment affirmed, with costs, on the opinion of the referee.

Present — Van Brunt, P. J., Patterson, Ingraham, McLaughlin and Laughlin, JJ.

The following is the opinion of Charles F. Brown, Esq., referee:

Brown, Referee:

The question presented in this case is whether the order of the board of health of the city of New York prohibiting the landing of the cargo of the steamship *J. W. Taylor* in the city constitutes a legal excuse for the failure of the defendants to perform their contract.

The essential and determining facts of the controversy are not in dispute, and as they appear in the decision they need not be here repeated.

The charter of the city* and other provisions of the law therein referred to confer upon the board of health very broad powers in respect to the preservation of the health of the city, and I do not understand that plaintiff questions the jurisdiction of the board to make the order referred to.

Violation and disobedience of the order of the board of health is declared to be a misdemeanor,† and the effect of the board's action was to make it unlawful to have landed in the city the coffee which the defendants had agreed to sell and deliver to J. H. Labaree & Co.

The general rule that the unqualified undertaking of a party to perform an act is not to be excused because some unforeseen contingency has rendered performance impossible is well settled. (*Beebe v. Johnson,* 19 Wend. 500; *Harmony v. Bingham,* 12 N. Y. 99; *Tompkins v. Dudley,* 25 id. 272; *Ward v. Hudson R. Building Co.,* 125 id. 230; *School District No.* 1 *v. Dauchy,* 25 Conn. 530; *School Trustees of Trenton v. Bennett,* 27 N. J. L. 514.)

In *Lorillard v. Clyde* (142 N. Y. 456) Chief Judge Andrews said of the rule that it " protects the integrity of contracts, and one of the

---

* See Laws of 1897, chap. 378, § 1168 *et seq.*— [Rep.
† See Laws of 1897, chap. 378, § 1262.— [Rep.

FIRST DEPARTMENT, JANUARY, 1905. [Vol. 100.

reasons assigned in its support * * * is that as against such contingencies the party could have provided by his contract."

The rule has, however, many exceptions. It is not applied to executory contracts for personal services (*Robinson* v. *Davison,* L. R. 6 Ex. 269; *Wolfe* v. *Howes,* 20 N. Y. 197; *Spalding* v. *Rosa,* 71 id. 40), nor for the sale of specific chattels (*Dexter* v. *Norton,* 47 N. Y. 62), nor for the use of particular buildings. (*Taylor* v. *Caldwell,* 113 E. C. L. 826.)

In the class of cases named the courts imply a condition into the contract that the person or thing shall be in existence when the performance is required. Hence the death or sickness of the person whose services are contracted for or the destruction of the chattels agreed to be sold or the building agreed to be let excuses performance.

If the law interferes and renders performance impossible, a party is excused. (*People* v. *Bartlett,* 3 Hill, 570; *Jones* v. *Judd,* 4 N. Y. 412; *Heine* v. *Meyer,* 61 id. 171; *People* v. *Globe Mutual Life Ins. Co.,* 91 id. 174; *Lorillard* v. *Clyde, supra;* 2 Pars. Cont. [8th ed.] 789–790.)

The learned counsel for the plaintiff contends that the interference by law which will excuse performance is limited to interference by laws enacted or taking effect after the making of the contract.

I can find no support for this contention in the decided cases, and the authorities above referred to are clearly opposed to such a rule.

Thus in *People* v. *Bartlett* (*supra*) it was held that the defendant was relieved from a recognizance for the appearance of a person at the General Sessions to answer to an indictment by the subsequent arrest and conviction of such person and sentence to State's prison in another county.

In *Lorillard* v. *Clyde* (*supra*) the defendant was held relieved from a guaranty of dividends upon corporate stock by a judgment which dissolved the corporation entered in an action brought by the Attorney-General. To the same effect is *People* v. *Globe Mutual Life Ins. Co.* (*supra*).

The decisions referred to were all based upon the conclusion that performance was made impossible by the act of the law.

In the class of cases of which those cited are illustrations the

courts have universally held that there was an implied condition in the contract that the situation existing when the contract was made should continue to exist at the time stipulated for performance.

While I have not been referred to nor have I been able to find any case precisely analogous in its facts to the case at bar, I am of opinion that this controversy falls within the principle of the authorities last cited.

The rule that persons must always be considered as contracting with reference to the law existing at the time of the contract operates on both parties, and it appears to be settled that if by the operation of provisions of law existing when the contract was made performance is rendered impossible the contract will be deemed dissolved. It necessarily follows that in cases falling within the rule stated stipulations in the contract against such contingencies are not essential to the relief of the party when performance is rendered impossible.

A clear statement of the general rule made by Mr. Justice JACKSON in the case of *Chicago, Milwaukee, etc., Railway* v. *Hoyt* (149 U. S. 1) is as follows: "There can be no question that a party may by an absolute contract bind himself or itself to perform things which subsequently become impossible or pay damages for the non-performance, and such construction is to be put upon an unqualified undertaking where the event which causes the impossibility might have been anticipated, and guarded against in the contract, or where the impossibility arises from the act or default of the promisor. But where the event is of such a character that it cannot be reasonably supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be held bound by general words which, though large enough to include, were not used with reference to the possibility of the particular contingency which afterwards happens."

In the present case the contingency that the coffee in its raw state should be absolutely excluded from the city was fully as remote as the dissolution of the corporation in *Lorillard* v. *Clyde* and *People* v. *Globe Mutual Life Ins. Co. (supra)*, and more so, it seems to me, than the destruction of specific chattels or of a particular building, or the sickness of an opera singer, which were the facts in other cases cited, and in my judgment it is fairly to be implied that the

contracting parties assumed that should the coffee survive the perils of navigation and arrive in the harbor of New York there would be no legal impediment to its deposit in store in the city.

This conclusion, I think, is manifest from the fact that the parties stipulated that there should be no sale unless the coffee arrived. The seller refused to assume the risks of navigation and to that extent the contract was by the expression " no arrival no sale " made a conditional one. The contingency that the board of health might exclude the coffee from the city was a most remote one. It undoubtedly was not in the minds of the contracting parties. Ordinarily in case of a cargo arriving from an infected port disinfection by the proper authorities would be all that would be required, and any delay or performance would necessarily be temporary.

That the cargo should be refused admission to the city absolutely after it had been disinfected and released from quarantine was a most unusual result.

If it had been landed and the board of health had taken possession of it pursuant to the order of December thirteenth and had destroyed it, there would be no question but what the defendants would have been relieved. The same result must follow its exclusion from the city.

In my opinion the doctrine of implied condition is applicable to the case and the parties must be deemed to have contracted upon the condition that there would be no legal interference with the admission of the coffee to the storehouses of the city, or rather that, if performance was rendered impossible by the act of law, the contract would be dissolved.

By the order of the board of health and the proceedings instituted by it through the police force to enforce the order performance was not only impossible but had become illegal. To have landed the coffee in New York would have been a misdemeanor; under such circumstances there could be neither readiness nor ability to perform. (*People* v. *Globe Mutual Life Ins. Co., supra.*)

The cases arising under an embargo laid upon the commerce of the port have no similarity to the case at bar. An embargo is necessarily a temporary condition and is so treated in all the cases I have examined. It does not have the effect to relieve a party absolutely from his contract but suspends performance only.

The cases of common carriers depend upon other considerations and are governed by different principles.

In the case of *Barker* v. *Hodgson* (3 Mau. & Sel. 267), cited by the plaintiff, there was no interference with the parties to the contract by act of the law, but Lord ELLENBOROUGH said in the course of his decision : " If, indeed, the performance of this covenant had been rendered unlawful by the government of this country, the contract would have been dissolved on both sides, and this defendant inasmuch as he had been thus compelled to abandon his contract would have been excused for the non-performance of it, and not liable to damages."

This extract has reference to a condition precisely like that shown in the present case. Performance of the contract was made unlawful by an act of the public authorities having jurisdiction over the subject-matter. The effect was to relieve the defendants from the strict stipulation of the contract.

While strict or literal performance of the contract was, therefore, rendered impossible the defendants were not absolutely relieved from their obligation. They were bound to make tender of the best delivery possible under the circumstances; but this I think they did.

On January fourth they offered to ship the coffee to any place designated by the plaintiff. This offer was refused, the plaintiff electing to stand upon the express terms of the contract and insisting upon compliance therewith by the defendants.

This offer was made by the defendants upon the assumption that the health board would allow the coffee to be landed at Erie Basin provided it was rebagged and immediately shipped out of the State.

The learned counsel for the plaintiff criticises this offer on the ground that the fact stated was untrue. The fact was that the health board had given no such permission. The defendants, however, when they wrote the letter believed that the board had given that permission, having been so informed by Mr. Force, who had entire charge of the cargo and the efforts that were being made to induce the board to permit it to be landed. The offer was one, therefore, made in good faith and in the belief that the defendants could perform what they tendered, and upon that assumption the

First Department, January, 1905. [Vol. 100.

offer was the best tender of performance that could be made under the circumstances.

The plaintiff did not refuse the offer because of the fact that the defendants were in error in supposing that the coffee could be landed; they refused it because they elected to stand upon the literal terms of the contract and insisted upon strict performance by the defendants.

It is of no importance, therefore, whether the board of health had or had not given its consent to the landing of the coffee when the offer was made. Even if the coffee could have been landed as the defendants supposed the plaintiff would not have accepted it, and they must now be deemed to have refused any tender of performance except in strict compliance with the terms of the contract.

That such was their attitude all through the period between the arrival of the steamship at Quarantine and the landing of the coffee at Weehawken is made plain by their reply to the defendants' letter of January twenty-sixth, in which they again stated that they would hold the defendants to the terms of the contract.

The plaintiff knew of the action of the board of health and generally of the inability of the defendants to make a delivery of the coffee in New York, and having taken the position of insisting upon a strict compliance with the terms of the contract, I think their offer made on February 5, 1900, to accept the coffee at any place was not timely and imposed no liability upon the defendants.

Every reasonable effort that was possible had been made by the defendants prior to January twenty-fifth to land the coffee in New York; the board of health had refused to modify its order except so far as would permit the coffee to be roasted under its supervision and direction. To do this was not practicable, nor would roasted coffee have been a good tender under the contract.

Under these circumstances and in view of the attitude of the plaintiff the defendants were justified in treating the contract as at an end.

I can find no support in the facts of this case for the contention of the learned counsel for the plaintiff that the orders of the board of health were temporary only and that the defendants should have continued their efforts to induce the board to modify said orders.

There is nothing in the situation as the testimony discloses from which it could be reasonably inferred that the board of health would change its attitude and modify the order.

The coffee had been disinfected at Quarantine and released therefrom. Notwithstanding this fact the board of health refused to permit it to be landed in the city in its raw state, and had prescribed specifically the conditions upon which a landing would be permitted. These conditions not only were impracticable, but compliance with them would have so changed the coffee that it could not have been tendered in performance of the contract.

Assuming that the general proposition contended for by the learned counsel is sound, the question whether the defendants should have made further efforts to induce the board to change its position is one of fact, and I am unable to find a single circumstance in the testimony indicating that the board would have given more favorable consideration to later applications than it had to those that were actually made.

In my opinion the defendants did all that could be done, and were justified it treating the subject before the board as closed. Performance of the contract by the defendants was legally excused, and the complaint must be dismissed on its merits.