47 App. Div. 611, 62 N. Y. Supp. 591; Perlman v. Gunn, 41 Misc. Rep. 168, 83 N. Y. Supp. 986.

In Burckle v. Eckhart, supra, it is said:

"The residence of a defendant within the limits of the circuit * * * is a jurisdictional fact, which must exist before the court can act at all, either by issuing process or accepting the appearance of a defendant. It is necessary to give jurisdiction of the cause, not of the person. In such case there can be no waiver."

In Frees v. Ford, supra, it was held that, upon an appeal from a judgment of a court of inferior jurisdiction, if it did not affirmatively appear that the court had jurisdiction, the judgment must be reversed. And the consent of a nonresident defendant will not avail to confer jurisdiction. "Consent may give jurisdiction of the person, but not of the subject-matter, nor of the action." Parkhurst v. Rochester L. Machine Co., 65 Hun, 490, 20 N. Y. Supp. 396; Davidsburgh v. Knickerbocker Life Ins. Co., 90 N. Y. 526; Weidman v. Sibley, 16 App. Div. 616, 44 N. Y. Supp. 1057.

In the Davidsburgh Case, supra, Judge Danforth says:

"There are, no doubt, many cases where the court, having jurisdiction over the subject-matter, may proceed against a defendant who voluntarily submits to its decision; but, where the state prescribes conditions under which a court may act, those conditions cannot be dispensed with by litigants."

In the Weidman Case, supra, it was said:

"While, in courts of general jurisdiction, an appearance in an action by a nonresident defendant, not served with process, may waive jurisdiction as to his person, it is not so with courts of limited jurisdiction."

And Judge Follett, in his opinion in that case, says:

"If all the parties to an action in a County Court should sign an agreement that the court might try and determine an action in which all or some of the defendants were not residents of the county, * * * it would not confer jurisdiction."

It is true that the cases of Bunker v. Langs, 76 Hun, 543, 28 N. Y. Supp. 210, and Dake v. Miller, 15 Hun, 356, cited by plaintiff, seem to hold that the defense of nonresidence may be waived. But Judge Rumsey, commenting upon them in the Worthington Case, supra, says:

"If these cases may be construed as holding that because the defendant, being a nonresident, failed to take his objection to the jurisdiction of the court, he was therefore precluded from insisting upon it, and the court had jurisdiction, although the nonresidence afterwards appeared, we do not think they can be sustained, in view of the case of Burckle v. Eckhart, supra."

It seems, therefore, that a judgment for plaintiff in this court will be void. The motions of defendants are granted.

Motions granted.

KINZER CONST. CO. v. STATE.

(Court of Claims of New York.   September 26, 1910.)

1. CONTRACTS (§ 309*)—NONPERFORMANCE—EXCUSE.

The common-law rule that inability to execute an absolute executory contract, due to subsequent unforeseen accident or misfortune, without the fault of either party, does not excuse performance, operative in New

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

York by Const. 1777, art. 35, subject to alterations as may be made from time to time, is subject to exceptions, and does not apply where a legal impossibility arises from a change in the law, or where the specific thing which is essential to the performance of the contract is destroyed, or where by sickness or death personal services become impossible, or where conditions essential to performance do not exist, and each of such contingencies will terminate the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1444–1446; Dec. Dig. § 309.*]

2. CONTRACTS (§§ 309, 319*)—BUILDING CONTRACTS—TERMINATION.

Where, in the construction of a canal of the state, natural conditions of soil unexpectedly appear which render performance as planned impossible, and which make necessary substantial changes in the nature and cost of the contract, and which substantially affect the work remaining under the contract, the law will read into the contract an implied condition that the contingency will terminate it, and the state may not compel performance, and the contractor may not ask the state to proceed with the work, but both parties are excused from further performance, and the contractor may recover for the work done and for the benefits received by the state under the contract to the time of the discovery of the conditions.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1444–1446, 1493–1498; Dec. Dig. §§ 309, 319.*]

3. CONTRACTS (§ 309*)—PERFORMANCE—EXCUSE—EFFECT.

Conditions which render performance of a contract impossible do not terminate the contract ab initio, and vitiate what has been done and what remains to be done that is capable of execution, but the conditions may be of such an extent as to amount to a substantial abrogation of the entire contract, or they may relate to an insignificant part thereof, and excuse performance only to the extent to which performance is impossible.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1444–1446; Dec. Dig. § 309.*]

4. CONTRACTS (§ 309*)—BUILDING CONTRACTS—RIGHTS OF PARTIES.

Where, in the course of the construction by a contractor of a canal of the state, natural conditions of soil unexpectedly appeared, so that performance is impossible, the state can relet the completion of the work at its expense, and the contractor cannot recover for any prospective profits of the work remaining to be done.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1444–1446; Dec. Dig. § 309.*]

5. CONTRACTS (§ 319*)—NONPERFORMANCE—RIGHT OF CONTRACTOR.

A contractor for the construction of a canal of the state cannot, on the termination of the contract, before performance, because of the discovery of natural conditions of soil rendering performance impossible, recover the premium on its surety bond; that being a part of the expense of the work considered in determining the profits of the contractor, had the state breached the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1493–1498; Dec. Dig. § 319.*]

6. CONTRACTS (§ 319*)—NONPERFORMANCE—RIGHT OF CONTRACTOR.

The contractor cannot recover for the cost of a change in the tracks of a railroad, where the work was covered by the contract.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 319.*]

7. CONTRACTS (§ 319*)—NONPERFORMANCE—RIGHT OF CONTRACTOR.

The contractor can recover for material on hand and delivered on the work at the time of the termination of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1493–1498; Dec. Dig. § 319.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. CONTRACTS (§ 319*)—NONPERFORMANCE—RIGHT OF CONTRACTOR.

The contractor can recover the damages resulting from a stop order issued by the state, which resulted in the contractor maintaining its plant in idleness for a time, but not for team work where no team work could have been done during the period covered by the stop order.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 319.*]

9. CONTRACTS (§ 319*)—RECOVERY—INTEREST.

A contractor for the construction of a canal can recover interest on the amount due on the contract and material delivered at the time of the termination of the contract before completion of the work because of the discovery of conditions preventing performance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1493–1498; Dec. Dig. § 319.*]

10. DAMAGES (§ 68*)—RECOVERY—INTEREST.

A contractor for the construction of a canal of the state who is entitled to unliquidated damages resulting from a stop order issued by the state is not entitled to interest on the damages awarded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 141–143; Dec. Dig. § 68.*]

Action by the Kinzer Construction Company against the State of New York. Judgment for plaintiff.

Kellogg & Rose, for claimant.

Edward R. O'Malley, Atty. Gen., Daniel E. Brong, A. E. Tuck, and M. H. Quirk, for the State.

RODENBECK, J. The claimant made a contract with the state of New York to construct 3.76 miles of the improved Champlain Canal which is a part of the so-called Barge Canal system of the state now in progress of construction; and while the work was in progress, and claimant was excavating for one of the locks, an extensive cave-in occurred, which revealed the fact that for the balance of the contract the earth was of a "slippery greasy clay," with not sufficient resistency to permit of the construction according to the contract, plans, and specifications of the lock and substantially the remainder of the work. The state issued a stop order while it was investigating and determining what to do under these unexpected conditions, and this order remained in force for six months, when an alteration order which involved extensive changes in the construction of the remainder of the work was submitted by the state to the claimant for the completion of the contract. The claimant refused to accept these alterations, insisting that they constituted a fundamental change in the contract and amounted to a breach of the contract by the state, and thereupon the state proceeded to advertise for bids for the completion of the work, and let it to other contractors, and the claimant filed this claim for the work done and not paid for, and for damages including loss of profits on the portion of the work uncompleted, amounting, in all, to $370,525.41. The total amount of the contract, including previous alteration orders, was $968,296.11, and there was uncompleted at the time that the stop order was issued $521,954.42, and of this amount $398,612 was eliminated and new work was added, aggregating $153,-584.50, so that the work to be done there was a reduction of $245,-027.50 or a decrease of about 25 per cent. of the contract price, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon these facts, and upon the terms of its contract, the claimant insists that the state violated its contract and justified its course in refusing to complete the contract; while the state claims that the construction of the work when the cave-in occurred revealed the fact that the subsoil was so treacherous that the lock could not be constructed in that section of claimant's contract at all, and made necessary the other changes in the plans and specifications, and also that the alterations were authorized by the contract, and that claimant was guilty of a breach of its contract in refusing to complete it as directed by the alteration order.  The claimant had agreed in its contract that it had satisfied itself by its own investigation and research regarding "all the conditions affecting the work," and that its conclusion to execute the contract was based upon such investigation and research, and not upon any information prepared by the state engineer.

If the contention of the claimant is sustained, the state will be obliged, not only to pay to the claimant the amount of work done and not paid for under the contract and profits which claimant estimates at $210,490.84 besides other damages, but to other contractors the profits, if any, which they will make upon the completion of the work under the reletting; while, if the position of the state is upheld that under the clause in the contract reserving to it the right to make necessary alterations in the plans it was authorized to make the changes which it did, the claimant not only loses the profits which it claims, but it must pay the state any damages caused by its failure to perform the contract including the increased cost, if any, of completing the work.  The contention of the claimant is based upon the interpretation that it places upon the clause in the contract relating to alterations in the plans and specifications, and it insists that the changes proposed by the state were fundamental alterations of the contract, and were not contemplated when the contract was made, and constituted a breach thereof.  This claim provides that the state may make such alterations in the plans and specifications as may be "necessary."

The case, however, does not turn upon the construction of this clause in the contract, but rests upon another proposition growing out of the conditions that were found when the attempt was made to construct lock No. 7.  When this part of the work was reached, a condition of the soil was found which made it impossible to construct the lock as planned, and made it impracticable to build it within the limits of the remainder of the contract.  When the excavation for the foundation of the lock had been carried to a depth of 10 or 12 feet, it was found that the underlying stratum was a greasy slippery clay with no grit in it—"just like axle grease," as one witness put it.  Claimant's expert said that he had never seen any soil like it, and that it would not be good engineering to build a lock in such material at all.  Under this condition of things, the case falls within that line of decisions where the contract is regarded as at an end and performance is excused because of the failure of conditions the existence of which are necessary to the performance of the contract.  The early rule upon impossibility as an excuse for the performance of a contract was that inability to execute an absolute executory contract due to subsequent unforeseen accident or misfortune without the fault of either party

will not excuse performance.   Paradine v. Jane, Aleyn, 26.   This rule
which was promulgated in English Jurisprudence as early as the year
1178 was based upon the ground as stated in this case that:

"Where the party by his own contract creates a duty or charge upon him-
self, he is bound to make it good, if he may, notwithstanding any accident
by inevitable necessity, because he might have provided against it by his con-
tract."

By the language of the Constitution of the state of New York, this
rule with the remainder of the common law of England and Great
Britain became operative in this state subject to such alterations as
might be made from time to time.   State Const. 1777, art. 35.   There
are many illustrations of the adoption and application of the rule in
this state (Harmony v. Bingham, 12 N. Y. 99, 62 Am. Dec. 142; Tomp-
kins v. Dudley, 25 N. Y. 272, 82 Am. Dec. 349; Wheeler v. Conn.
Mut. Life Ins. Co., 82 N. Y. 543, 37 Am. Rep. 594; Booth v. Spuyten
Duyvil Rolling Mill Co., 60 N. Y. 487), but exceptions began to creep
in as a strict enforcement of the rule seemed to work out an inequita-
ble result.

In England the rule prevailed in all its severity down to the middle
of the last century (Hall v. Wright, E. B. & E. [1857]), but since then
the courts both here and in England have modified it to a large extent
upon the theory that the event which rendered the performance im-
possible should be implied as a matter of law as one of the conditions
of the contract (Taylor v. Caldwell, 3 B. & S. 8249 [1863]; Bailey
v. De Crespigny, L. R. 4 Q. B. 185), thus carrying out the supposed
intention of the parties, and placing such contingencies as excuse per-
formance upon the same basis as an act of God which Pollock de-
fines as:

"An event which as between the parties and for the purposes of the matter
in hand cannot be definitely foreseen or controlled."   Pollock on Contracts
(3d Ed.) p. 535.

. These exceptions have been growing so that now there are at least
four well-recognized modifications of the early rule, while the courts
seem to be groping for a rule broad enough to include all of the ex-
ceptions.   Three of these exceptions have long since been firmly es-
tablished in the jurisprudence, not only of this country, but of Eng-
land, and the fourth has been adopted in many cases of recent date
in this state where the existing rules did not equitably meet the pecu-
liar facts.   The rule that performance is excused where legal impossi-
bility arises from a change in the law or where the specific thing which
is essential to performance is destroyed, or where there is an incapac-
ity by sickness or death in the case of a contract for personal services,
are of long standing, but quite recently a fourth and broader rule has
grown up which is applicable to the case at bar.

One writer in the Columbia Law Review, in discussing the tendency
toward a broader rule to meet cases of impossibility in the perform-
ance of contracts, says: -

"If the contingency which makes the contract impossible of performance is
such that the parties to the contract, had they actually contemplated it, would

probably have regarded it as so obviously terminating the obligation as not to require expression, failure of performance should be excused." Volume 1, p. 533.

Another writer in the Harvard Law, Review, criticising the proposed rule, suggests another:

"A proper rule, it is suggested, is that impossibility should be recognized as a defence wherever it seems reasonable that, had the contingency which renders performance impossible been contemplated by the parties, they would have both agreed that its introduction into the contract as a condition terminating the obligation would be just." Volume 15, p. 419.

A third writer in the same Review, after referring to the general rule and its exceptions, says:

"The New York court, however, has of late been more liberal and in a somewhat indefinite way has laid down the doctrine that impossibility is an excuse when caused by the noncontinuance either of the subject-matter of the contract or of the conditions essential to its performance." · Volume 15, p. 63. .

There is abundant warrant in the decided cases in this state for these attempts to state the broad rule that the courts are now following in relation to this subject and to justify the statement that the "modern tendency seems to be toward a more lenient construction. More regard is paid to what must have been the intention of the parties." American Law Register 1909, p. 570.

In Stewart v. Stone, 127 N. Y. 500, 507, 28 N. E. 595, 596 (14 L. R. A. 215), the factory at which milk delivered by plaintiff and his assignor was to be manufactured into cheese and butter burned, and with it a quantity of butter and cheese and some milk which had not been converted into cheese and butter. Judge Bradley says in the course of his opinion:

"It is true that, where an absolute executory contract is made, the contractor is not excused by inability to execute it caused by unforeseen accident or misfortune, but must perform or pay damages unless he has protected himself against such contingency by stipulation in his contract. Harmony v. Bingham, 12 N. Y. 99 [62 Am. Dec. 142]; Tompkins v. Dudley, 25 N. Y. 272 [82 Am. Dec. 349]; Wheeler v. Conn. Mut. L. Ins. Co., 82 N. Y. 543 [37 Am. Rep. 594]. But there may be in the nature of a contract an implied condition by which he will be relieved from such unqualified obligation, and when, in such case, without his fault, performance is rendered impossible it may be excused. That is so when it inherently appears by it to have been known to the parties to the contract, and contemplated by them when it was made, that its fulfillment would be dependent upon the continuance or existence at the time for performance of certain things or conditions essential to its execution. Then in the event they cease, before default, to exist or continue, and thereby performance becomes impossible without his fault, the contractor is, by force of the implied condition to which his contract is subject relieved from liability for the consequences of his failure to perform. People v. Bartlett, 3 Hill, 570; Dexter v. Norton, 47 N. Y. 62 [7 Am. Rep. 415]; Booth v. S. D. R. Mill Co., 60 N. Y. 491; Taylor v. Caldwell, 3 B. & S. 826."

In Lorillard v. Clyde, 142 N. Y. 456, 462, 37 N. E. 489, 491 (24, L. R. A. 113), the defendant was relieved from paying dividends, which he has agreed to do, because the corporation out of whose earnings they were to come had been involuntarily dissolved. Chief Judge Andrews says in his opinion:

"The general doctrine that when a party voluntarily undertakes to do a thing, without qualification, performance is not excused, because, by inevitable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do is well settled. This doctrine protects the integrity of contracts, and one of the reasons assigned in its support in the early case of Paradine v. Jane (Aleyn Rep. 26) is that as against such contingencies the party could have provided by his contract. See Harmony v. Bingham, 12 N. Y. 99 [62 Am. Dec. 142]; Ford v. Cotesworth L. R. (4 Q. B.) 134; Jones v. U. S., 96 U. S. 24 [24 L. Ed. 644]. But it is now well settled that when performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation. Executory contracts for personal services, for the sale of specific chattels, or for the use of a building are held to fall within this principle. Dexter v. Norton, 47 N. Y. 62 [7 Am. Rep. 415]; People v. Globe Mutual Ins. Co., 91 N. Y. 174; Taylor v. Caldwell, 113 Eng. C. L. 826. These cases are not exceptions to the rule that contracts voluntarily made are to be enforced, but the courts in accordance with the manifest intention construe the contract as subject to an implied condition that the person or thing shall be in existence when the time of performance arrives. So if after a contract is made the law interferes and makes subsequent performance impossible the party is held to be excused. Jones v. Judd, 4 N. Y. 412. It must be conceded that it is difficult to draw the line and to determine the exact limitations of the principle. When the executory contract relates to specific chattels, and the subject-matter is destroyed without fault of the party, the implied condition arises and excuses performance. But where the contract is based on the assumed existence and continuance of a certain condition, or upon the continuance of a subject-matter which, however, is not the direct object of the contract, is the principle in such cases excluded? The present case illustrates what we have in mind. The contract in question was not with the corporation whose life was extinguished by the judgment of dissolution. But the guaranty assumed that the corporation would continue in existence during the seven-year period. The liability which the defendants assumed was in consideration of the benefits which might accrue to them from the management of the transportation business of the corporation during that period. Upon the assumption that the death of the corporation was brought about without their fault, were they thereafter bound? Is the doctrine of implied condition less applicable than it would be if the contract had been between the defendants and the corporation? If in the one case the contract, so far as it was unexecuted, would be terminated, did not the happening of the same event terminate the engagement of these parties, based on the assumed continuance of the corporation, in life?"

In Dolan v. Rodgers, 149 N. Y. 489, 493, 44 N. E. 167, 168, the event which rendered further performance of the contract impossible was the interference of a railroad company for whom the defendants were constructing a road under a contract under which they had sublet a part of the work to the plaintiff in violation of a clause in the contract forbidding subletting without consent. In his opinion Judge Vann says:

"There are many cases holding that the continued existence of the means of performance or of the subject-matter to which the contract relates is an implied condition, and the rule seems to rest on the presumption that the parties necessarily intended an exception, and, as said in Dexter v. Norton, 47 N. Y. 62, 66 [7 Am. Rep. 415], it operated 'to carry out the intention of the parties under most circumstances, and is more just than the contrary rule.' Tone v. Doelger, 6 Rob. 251, 256; Walker v. Tucker, 70 Ill. 527; Thomas v. Knowles, 128 Mass. 22; Field v. Brackett, 56 Me. 121; Scully v. Kirkpatrick, 79 Pa. 324, 332 [21 Am. Rep. 62]; Shear v. Wright, 60 Mich. 159 [26 N. W. 871]; Howell v. Coupland, L. R. (L. Q. B. D. 528); Robinson

v. Davison, 40 L. J. Ex. 172; Appleby v. Myers, 36 L. J. P. 331, 336. The effect of the rule is to excuse both parties from further performance of the contract without giving to either the right to recover damages for the part not performed. Id. In England the rule seems to go no farther in its effect than to relieve both parties from any obligation under an entire contract, with reference either to the future or the past. In this country, however, there may be a pro rata recovery for part performance by the one party, at least where what has been done is of benefit to the other. Jones v. Judd, 4 N. Y. 412; Cleary v. Sohier, 120 Mass. 210; Butterfield v. Byron, 153 Mass. 517 [27 N. E. 667, 12 L. R. A. 571, 25 Am. St. Rep. 654]; Cook v. McCabe, 53 Wis. 250, 258 [10 N. W. 507, 40 Am. Rep. 765]; Schwartz v. Saunders, 46 Ill. 18; Hollis v. Chapman, 36 Tex. 1; Niblo v. Binsse, *40 N. Y. 476."

In Herter v. Mullen, 159 N. Y. 28, 40, 53 N. E. 700, 704, 44 L. R. A. 703, 70 Am. St. Rep. 517, the defendant was relieved from liability for a year's rent by reason of holding over after the expiration of his term on account of the sickness of a member of his family. Judge O'Brien says:

"Legal rules may sometimes be pushed to a point where they accomplish the grossest injustice, and it then becomes the duty of the courts to limit their application to cases that are within their true scope and fair meaning."

In Buffalo & Lancaster Land Co. v. Bellevue L. & I. Co., 165 N. Y. 247, 254, 59 N. E. 5, 7, 51 L. R. A. 951, the plaintiff failed to secure relief for an alleged breach of a contract for the construction of an electric road under which the defendant had agreed to operate cars certain hours each day, and was prevented from doing so on certain days in the winter by storms of unusual severity. In the course of his opinion, Judge O'Brien says:

"It is a well-settled rule of law that, where a party by his own contract absolutely engages to do an act, it is his own fault and folly that he did not thereby provide against contingencies and exempt himself from responsibility in certain events. In such cases performance is not excused by inevitable accident, or other contingency, although not foreseen, or under the control of the party. When the contract is absolute, the vis major is not an excuse for nonperformance. Ward v. H. R. B. Co., 125 N. Y. 230 [26 N. E. 256]; Harmony v. Bingham, 12 N. Y. 99 [62 Am. Dec. 142]. But there are many contracts from which by their very nature a condition may be implied that a party will be relieved from the consequences of nonperformance in some slight particular, where the obligation is qualified, or when performance is rendered impossible without his fault, and we think the contract in question belonged to that class. Stewart v. Stone, 127 N. Y. 500 [28 N. E. 595, 14 L. R. A. 215]; Dexter v. Norton, 47 N. Y. 62 [7 Am. Rep. 415]; Worth v. Edmonds, 52 Barb. 40; Lorillard v. Clyde, 142 N. Y. 456 [37 N. E. 489, 24 L. R. A. 113]; Taylor v. Caldwell, 113 Eng. Com. Law, 826; C., M. & St. P. Ry. Co. v. Hoyt, 148 U. S. 1 [13 Sup. Ct. 779, 37 L. Ed. 625]; Clifford v. Watts, L. R. (5 C. P.) 557."

In Labaree Co. v. Crossman, 100 App. Div. 499, 504, 92 N. Y. Supp. 565, 567, the impossibility of performance arose from an order of the board of health of the city of New York prohibiting the landing of a cargo of coffee. The court, adopting the opinion of the referee who tried the case, says:

"In my opinion the doctrine of implied condition is applicable to the case, and the parties must be deemed to have contracted upon the condition that there would be no legal interference with the admission of the coffee to the storehouses of the city, or rather that, if performance was rendered impossible by the act of the law, the contract would be dissolved."

In Whipple v. Lyons Beet Sugar Refining Co., 64 Misc. Rep. 363, 365, 118 N. Y. Supp. 338, 340, the impossibility of performance arose from drought and other climatic conditions which prevented the defendant from carrying out a contract to grow a certain number of acres of beets for a sugar company according to certain printed instructions. Judge Pound says:

"The reasonable inference is that it was the performance of these conditions only, that the parties had in mind when the stipulation for liquidated damages was made, and that the contract is one for a crop to be raised according to defendant's specific instructions and is subject to the implied condition that, if the seeds planted failed to grow on a portion of the land selected in accordance with such instructions by reason of drought or other climatic conditions over which the plaintiff had no control, performance would be excused."

From these cases, it will be seen that a fourth exception must be made to the general rule that accident or an unforeseen contingency arising without the fault of either party will not excuse performance of an absolute executory contract, and the four exceptions may now be stated broadly as follows: First, where the legal impossibility arises from a change in the law (Jones v. Judd, 4 N. Y. 411; Heine v. Meyer, 61 N. Y. 171; Labaree Co. v. Crossman, 100 App. Div. 499, 92 N. Y. Supp. 565; People v. Bartlett, 3 Hill, 570; Hildreth v. Buell, 18 Barb. 107); second, where the specific thing which is essential to the performance of the contract is destroyed (Dexter v. Norton, 47 N. Y. 62, 7 Am. Rep. 415; People v. Globe Mut. L. Ins. Co., 91 N. Y. 174; Lorillard v. Clyde, 142 N. Y. 456, 37 N. E. 489, 24 L. R. A. 113; Hayes v. Gross, 9 App. Div. 12, 40 N. Y. Supp. 1098); third, where sickness or death personal services become impossible (Wolfe v. Howes, 20 N. Y. 197, 75 Am. Dec. 388; Clark v. Gilbert, 26 N. Y. 279, 84 Am. Dec. 189; Spalding v. Rosa, 71 N. Y. 40, 27 Am. Rep. 7; Gaynor v. Jonas, 104 App. Div. 35, 93 N. Y. Supp. 287; Matter of Daly, 58 App. Div. 49, 68 N. Y. Supp. 596); and fourth, where conditions essential to performance do not exist (Stewart v. Stone, 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215; Dolan v. Rodgers, 149 N. Y. 489, 44 N. E. 167; Buffalo & Lancaster Land Co. v. Bellevue L. & I. Co., 165 N. Y. 247, 59 N. E. 5, 51 L. R. A. 951; Whipple v. Lyons Beet Sugar Refining Co., 64 Misc. Rep. 363, 118 N. Y. Supp. 338). From these considerations the rule may be deduced fairly in the present case that where in the course of the construction of a canal natural conditions of soil unexpectedly appear which contingency the contract does not in express terms cover, and which render the performance of the contract as planned impossible, and make necessary substantial changes in the nature and cost of the contract and substantially affect the work remaining under the contract, the law will read into the contract an implied condition when it was made that such a contingency will terminate the entire contract.

These terms are implied in the contract by force of the law itself, and not because the parties had them in mind. Whether we approve of their insertion upon the theory that had the attention of the parties been called to the conditions giving rise to the application of the rule, they would have omitted any reference to them because obvi-

·ously covered by the law (1 Columbia Law Review, p. 533), or upon the theory that they would have regarded them as just provisions to have inserted (15 Harvard Law Review, p. 419).

In the eyes of the law being a part of the terms of the contract, the ·conditions that rendered performance impossible do not terminate the contract ab initio, and vitiate what has been done and what remains to be done that is capable of execution.  The conditions may be of such an extent as to amount to a substantial abrogation of the entire contract, or they may relate to an insignificant part of the contract, but they excuse performance only to the extent to which performance is impossible, and leave what has been done valid permitting a recov-·ery therefor, and may not excuse performance of the remaining work. No general rule can be laid down which will apply to all cases, but each case must be decided upon its own facts, and that this course can be taken and justice done according to the facts in each case unham-·pered by written rules is due to the great flexibility of the common law which is its chief merit.  Applying this rule to the case at bar, it will be seen to work out an equitable result.  The state was not in a posi-·tion to compel performance of an impossibility, and likewise the claim-ant could not ask the state to proceed with the contract.  It would not have been fair of the state to insist upon the literal 'performance of its contract, and place the loss upon the claimant for the failure to perform, nor would it have been ·just for the claimant to insist that the state must carry out its contract as planned or suffer the penalty ·of paying damages, including prospective profits for the breach of the contract.  It is better to regard the contract as at an end, and treat both parties as having been excused from further performance allow-ing the claimant to recover for work done and for benefits received by the state under the contract down to the time of the discovery of the conditions which rendered performance impossible, and for such damages as may have resulted to it from the stop order issued by the state.  Both of the parties were in the same situation at the time that the conditions were discovered, and the rule applied leaves both of them to share the responsibilities for these conditions which were not anticipated when the contract was made thus carrying out the spirit ·of the state Constitution, which provides that, if for any unforeseen cause the terms of any contract prove to be unjust and oppressive, the canal board may upon the application of the contractor cancel the contract.  State Const. art. 7, § 9.  The state, therefore, had the right to relet the completion of the work, but must bear the increased ex-·pense resulting therefrom, while the claimant is not entitled to recover for any prospective profits on the work remaining to be done.  Rhodes v. Hinds, 79 App. Div. 379, 79 N. Y. Supp. 437; Snyder v. City of New York, 74 App. Div. 421, 77 N. Y. Supp. 637; Sickels v. United States, 1 Ct. Cl. 214.

The claimant is not entitled to recover the premium on its surety bond, as that is part of the expense of doing the work which would be ·considered in determining the profits to which the claimant would be entitled had the state been guilty of a breach of its contract.  It does ·not differ from other items of expense for which the claimant cannot recover, such as the purchase of its plant for the performance of the

contract. Beckwith v. City of New York, 121 App. Div. 464, 106 N. Y. Supp. 175.

The claimant is not entitled to recover for the cost of the one on three slope order involving a change in the tracks of the Delaware & Hudson Railroad, since that work was covered by the terms of its contract, and would have been required irrespective of the one on three slope order.

The state is not entitled to recover upon its alleged counterclaim a construction which the state itself placed upon the contract when it paid for restoring navigation on the Champlain Canal after the previous cave-in.

The claimant is entitled to recover the amount of work done and unpaid for at the time that the cave-in occurred amounting to $41,718.-63. This amount is somewhat less than that submitted by the claimant, and is the amount conceded by the state having been made up from actual measurements by the state in the usual way that previous estimates and payments under the contract had been made.

The claimant is entitled to recover for material on hand and delivered on the work at the time that the termination of the contract occurred. This material, although not actually put in place in constructed work, occupied the same position under the contract as such material, since it was delivered and ready for use. The amount allowed for foundation piles delivered is $8,741.40, for sheet piling delivered made up $5,214.76, for sheet piling delivered not made up $579.84. These several amounts are taken rather than the amounts shown upon the trial by the claimant, because they were testified to by state witnesses from actual count on the ground. There should also be allowed for material on hand $4,760.33 claimed by the claimant and conceded by the state and for filet on hand $129.20, a slight reduction from the amount claimed. The sum of these items of material delivered is $19,425.53.

The claimant is also entitled to recover for two small items, one for derrick delay damages and another for pile driver damages, amounting together to $253.80, the amount claimed by the claimant and conceded by the state.

The claimant is also entitled to recover for damages resulting from the stop order issued by the state. The liability of the state is placed upon the ground that instead of acting upon the conditions as they arose, and treating the contract as terminated at that time, the state issued an order requiring the claimant to maintain its plant in idleness for a period of six months. The claimant is not entitled to all of the damages claimed under this head. An allowance for rental of plant is made for 151 days at $50 a day, amounting to $7,550, as against $9,-200 claimed by the claimant, which latter amount includes an allowance for the entire six months, including Sundays and holidays, which should be deducted. The item for team work, amounting to $6,277,. is disallowed on the ground that no team work could have been done during the period covered by the stop order, and because the teams had gone into winter quarters. In place of the allowance of $5,454.68 for superintendence, $1,731.29 is allowed, which is the amount which was shown by the books of the claimant to be the actual cost of su-

perintendence to the claimant.  The sum of these items for damages resulting from the stop order is $9,281.29.

A summary of the disallowances is as follows:

### Summary of Disallowances.

| | |
|---|---:|
| Profits | $210,490 84 |
| Premium bond | 3,836 70 |
| One on three slope order | 727 47 |
| State's counterclaim | 13,280 01 |
| Total | $228,335 02 |

A summary of allowances made to the claimant is as follows:

### Summary of Allowances.

| | |
|---|---:|
| Due on contract | $ 41,718 63 |
| Material delivered | 19,425 53 |
| Derrick damages | 108 80 |
| Pile driver damages | 145 |
| Stop order damages | 9,281 29 |
| Total | $ 70,679 25 |

The claimant is entitled to recover interest on the amount due on the contract and material delivered amounting to $61,144.16, but is not entitled to interest on the unliquidated damages amounting to $9,-535.09.  Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101.

The claimant should have judgment for $70,679.25, with interest on $61,144.16 from December 15, 1908.

Judgment entered accordingly.